# Exhibit A

State Court Documents

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENVILLE | ) OF THE THIRTEENTH CIRCUIT |
| | ) |
| DWIGHT H. SMITH and THE SMITH | ) DOCKET NO. |
| INSURANCE AGENCY, INC., | ) |
| | ) |
| PLAINTIFFS, | ) **COMPLAINT FOR DECLARATORY** |
| | ) **JUDGMENT ACTION** |
| vs. | ) |
| | ) |
| NAVIGATORS INSURANCE COMPANY, | ) |
| | ) |
| DEFENDANT. | ) |

COMES NOW Dwight H. Smith and The Smith Insurance Agency, Inc., by and through the undersigned counsel of record and files this Complaint for Declaratory Judgment. Plaintiffs allege as follows:

1. The Smith Insurance Agency, Inc. is a corporation organized and existing pursuant to the laws of the State of South Carolina and does business in Greenville County.

2. Dwight Smith is a licensed insurance agent selling insurance in the State of South Carolina. Dwight Smith is the Principal of The Smith Insurance Agency, Inc.

3. Defendant Navigators Insurance Company (herein "Navigators") is an insurance company organized and existing pursuant to the laws of the State of New York with a principal place of business in New York, New York.

4. Defendant Navigators Insurance Company may be served at One Penn Plaza – 32nd Floor, New York, New York 10119.

5. All parties and the subject matter hereof, fall within the jurisdiction of this Honorable Court.

6. This action is brought pursuant to S.C. Code Ann. §§15-53-10 et. al., for a determination

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

and declaration of rights under the Defendant's respective policies of insurance.

7. Plaintiffs also bring causes of action for breach of contract and insurance bad faith against the Defendant and seeks all damages provided by law, including but not limited to Plaintiffs' attorney's fees for being forced to bring this action, and costs, and all of Plaintiffs' attorney fees and expenses incurred (and continuing to be incurred) for defending the Plaintiffs in the underlying litigation for which Defendants refuse to provide a defense or indemnification.

## FACTS

### A. THE NAVIGATORS INSURANCE POLICIES

8. Navigators issued an Insurance Agents and Brokers Professional Liability Policy #PHI14IAP516824IV to The Smith Insurance Agency, Inc. (herein "Smith Insurance") with a policy period of June 12, 2014 to June 12, 2015.

9. Navigators issued a renewal Policy #PH15IAP516824IV (herein simply the "2015 Policy") with a policy period of June 12, 2015 to June 12, 2016 to Smith Insurance. A copy of the insurance policy is attached as Exhibit "A".

10. Smith Insurance paid a premium of $4,722.00 for the coverage on that policy.

11. Navigators issued a renewal Policy #PH16IAP516824IV (herein simply the "2016 policy") with a policy period of June 12, 2016 to June 12, 2017. A copy of the insurance policy is attached as Exhibit "B"

12. Smith Insurance paid a premium of $5,379.00 for coverage on that policy.

13. There is no material difference in the language between the 2015 Policy or 2016 Policy.

14. Navigators did not offer a policy to Smith Insurance for June 12, 2017 – June 12, 2018 because Navigators was in the process of withdrawing from selling Insurance Agent and

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Broker Professional Liability Policies in South Carolina.  (See letter from Alex Nix the E&O broker for Smith Insurance, dated March 13, 2017, attached as Exhibit "C")

**B.   THE PALMETTO AUTOMOTIVE CONSULTANT'S CLAIM AGAINST THE SMITH INSURANCE AGENCY, INC. AND DWIGHT SMITH.**

15. Smith Insurance became broker of record for Palmetto Automotive Consultants, Inc. on or about 2004 for CGL policy and a commercial umbrella policy issued by Auto Owners Insurance Company (Policy # 962316-36048424 and 96-600677-00 respectively).   The Broker of Record Change form is attached as Exhibit "D" and the note from Auto Owners showing that they received notice of agent of record change is attached as Exhibit "E"

16. Palmetto Automotive Consultants, Inc. is owned and operated by Edward Pace and Michael Perkins.

17. The Auto Owners Insurance Company policies were first written on or about 1996 and the insurance agent that helped Palmetto obtain them was Phillip Wills and the broker of record before Phillip Wills was Roy Phillips.  (See letter from Palmetto to insurance agent Roy Phillips, June 3, 2002, attached as Exhibit "F")

18. The policies were renewed every year from 2004 to present date.

19. On or about March 31, 2016, agents of Palmetto Automotive Consultants, Inc. put Smith Insurance on notice of a potential claim against them by some car dealers alleging that Palmetto Automotive and other companies sold vehicle gap insurance policies which were never paid out on.  Smith Insurance Company forwarded that notice to Auto Owners on March 31, 2016.  (See email and Acord notice from Smith Insurance to Owners attached as Exhibit "G")

20. On March 21, 2016 McElveen Buick GMC, Inc., Economy Cars, LLC, TruAuto Inc., and Lowcountry Credit Inc. filed suit against Palmetto Automotive Consultants, Inc., Edward

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Pace, Michael Perkins, Jason Fletcher, Partners Alliance Corporation, Performance Automotive Management, Inc. and Patrick Brown in the Court of Common Pleas, Ninth Judicial Circuit in Charleston County, Case No. 2015-CP-10-1409.  A copy of the Complaint is attached as Exhibit "H".

21. At some point in time, Auto Owners notified Palmetto Automotive that their policy did not provide coverage for the claims against them in the McElveen Buick case.

22. On May 16, 2016 William Hanna, an attorney in Surfside Beach, SC sent a letter to Smith Insurance regarding the McElveen Buick case and stating that since the Auto Owners policy did not provide coverage that Smith Insurance should assume full defense of the McElveen action ad indemnify Palmetto for all actions in the action.  (Exhibit "I")

23. Shortly after receipt of the May 16, 2016 Dwight Smith spoke with Mr. Hanna.  Mr. Hanna told Mr. Smith that the claims in the McElveen case were not valid and that the case should be dismissed quickly and Mr. Smith's understanding was that the demand letter was withdrawn based on the conversation.

24. Dwight Smith reasonably thought that no claim was going to be made against him based on the conversation and did not file a claim at that time.

25. On July 27, 2016 William Hanna sent a letter to Smith Insurance following up on his first letter and requesting that Smith Insurance's E&O provider be put on notice.  (Exhibit "J")

26. On August 2, 2016 Steve Wagner, a manager at Smith Insurance emailed Mr. Hanna and told him he would put Navigators on notice. He asked Mr. Hanna for his best estimate as to the cost of defense so that he could notify Navigators as to the potential exposure to Navigators. (Exhibit "K")

27. On August 17th, 2016, Steve Wagner emailed Mr. Hanna again requesting an estimate on

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

the cost of the defense for Palmetto Automotive stating that "This information is necessary so we can proceed forward on this file."  (Exhibit "L")

### C. SMITH INSURANCE GIVES NOTICE OF THE CLAIM TO NAVIGATORS AND NAVIGATORS DENIES COVERAGE FOR THE FIRST TIME.

28. On August 17th, 2016 Mr. Wagner faxed a letter to Navigators to put them on notice of a possible claim by Palmetto Automotive.  Mr. Wagner gave Navigators Mr. Hanna's contact information.   (Exhibit "M")

29. The 2015 Navigators Policy states in Section V – CONDITIONS that if during **the policy period** any **insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, that the **Insured** must give written notice to the Company "with full particulars, including:

gives written notice to the **Company** with full  particulars including:

a.    The specific act or omission;

b.    The dates and persons involved;

c.    The identity of anticipated or possible claimants;

d.    The circumstances by which the **Insured** firs became aware of the possible **claim; and**

e.    Potential damages or injury.

**(Highlighting added by Plaintiffs' counsel).**

30. By the August 17th, 2016 letter to Navigators Smith Insurance did not have information of the potential damages, but decided to put them on notice anyway.

31. On October 12, 2016 Navigators sent a letter to Smith Insurance denying coverage for any errors and omissions allegedly made by Smith Insurance.  (Exhibit "N")

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

32. The basis of their denial was that the August 17, 2016 notice of the claim was not made within the 30 day grace period of reporting under the 2015 Policy, and also that the reporting of the claim would not be covered under the 2016 Policy.

33. From August 17th, 2016 to October 12, 2016, Navigators took no action to investigate the underlying facts of the allegations any further.

34. From August 17, 2016 to October 12, 2016, Navigators did not speak to any attorneys involved in the underlying McElveen Buick lawsuit to further investigate the claims.

35. From August 17, 2016 to October 12, 2016, Navigators took no other actions to determine whether there might be a settlement opportunity for Smith Insurance with Palmetto.

36. From August 17, 2016 to October 12, 2016, Navigators took no other actions to determine who the relevant witnesses might be regarding the claims of Palmetto against Smith Insurance.

37. From August 17, 2016 to October 12, 2016, Navigators took no other action to obtain documents regarding the claims of Palmetto against Smith Insurance.

38. From August 17, 2016 to October 12, 2016 Navigators took no steps to prepare for a defense of Smith Insurance against the claims of Palmetto.

39. From August 17, 2016 to October 12, 2016 Navigators did not research South Carolina contract law and analyze how their policies and provisions would be interpreted by the South Carolina courts.


### D. PALMETTO FILES SUIT AGAINST SMITH INSURANCE AND DWIGHT SMITH AND NAVIGATORS CONTINUES TO DENY COVERAGE

40. Steve Wagner at Smith Insurance emailed Navigators on or about October 17, 2016 asking them to review the prior coverage determination.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

41. Navigators hired coverage counsel in New York – Ropers Majeski Kohn Bentley, PC ("RMKB") and RMKB notified Mr. Wagner on or about October 24, 2016 that they stood firm on their denial of coverage.

42. On November 21, 2016 Clarence Edward Pace, Jr.; Michael Perkins; and Palmetto Automotive Consultants filed suit against Dwight Smith and The Smith Insurance Agency, Inc. alleging breach of contract and professional negligence.  Case No: 2016-CP-23-6759 filed in Greenville County, South Carolina.  A copy of the Complaint is attached as Exhibit "O".  (This Pace v. Smith Insurance Agency suit was dismissed and then refiled as Clarence Edward Pace, Jr; Michael Perkins; and Palmetto Automotive Consultants, Inc. v. Dwight H. Smith and The Smith Insurance Agency, Inc. in Greenville County, Case No: 2018-CP-23-01423.  A copy of the Second Amended Complaint is attached as Exhibit "S", these suits are collectively referred to as The Palmetto Automotive Suits herein)

43. On November 28, 2016 Mr. Wagner forwarded the Summons and Complaint in The Palmetto Automotive Suit to RMKB and asked whether the filing of the Complaint changed Navigator's position.

44. On December 6, 2016, RMKB, on behalf of Navigators, wrote to Mr. Wagner again, stating that the lawsuit did not change Navigators' coverage denial.  (Attached as Exhibit "P")

45. On December 15, 2016 The McNair Law Firm, on behalf of the Plaintiffs, wrote to Navigators with relevant case law and requesting that Navigators provide a defense to the The Palmetto Automotive Suit.  (Attached as Exhibit "Q")

46. On January 20, 2017, RMKB responded to Plaintiffs' counsel and once again denied to provide coverage or indemnification for The Palmetto Automotive Suit against Plaintiffs. (Attached as Exhibit "R").

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

47.  At al times relevant, Plaintiffs were insureds of Navigators

48. At all times relevant, Plaintiffs fulfilled and complied with all its duties, obligations, responsibilities and covenants of the policy.

49. Navigators failed to properly investigate the underlying Complaint in The Palmetto Automotive Suit.

50. Navigators failed to adopt and implement reasonable standards for the investigation of the claims arising under the Navigators policies with Plaintiffs.

51. Navigators has failed to reasonably and promptly reimburse litigation expenses incurred by the Plaintiffs in the underlying Complaints.

52. The Defendants have failed and refused to comply with the duty to defend Plaintiff's in the underlying Complaints.

53. As a direct and proximate result of Navigators' wrongful actions, Plaintiffs have been damaged, including but not limited to having to pay attorney fees and litigation expenses, as well as the lost value of money used to defend themselves since Navigators' initial denial of coverage.


### FIRST CAUSE OF ACTION – BREACH OF CONTRACT

54. The allegations of Paragraphs 1 through 53 are incorporated by reference as if fully stated herein.

55. Smith Insurance and Navigators entered into a binding contract of insurance.

56. Navigators breached and failed to perform its obligations under the insurance policies.

57. That as a direct and proximate result of Navigator's breaches, the Plaintiffs have suffered damages described herein.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

## SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT

58. The allegations of Paragraphs 1 through 57 are incorporated by reference as if fully stated herein.

59. for a determination and declaration of rights under the Defendant's respective policies of insurance.

60. Pursuant S.C. Code Ann. §§15-53-10 et. al., Plaintiffs seek a Declaratory Judgment from this Court determining the rights and liabilities of the parties regarding Navigators' policies of insurance.

61. There exists an actual controversy among the Plaintiffs and Navigators involving the various rights, liabilities, and legal responsibilities to the insurance policies referenced above.

## THIRD CAUSE OF ACTION – INSURANCE BAD FAITH

62. The allegations of Paragraphs 1 through 61 are incorporated by reference as if fully stated herein.

63. Navigators issued a mutually binding contract of insurance to Smith Insurance.

64. Navigators has unreasonably refused to pay benefits and honor obligations due under the contract of insurance.

65. That as a direct and proximate results of Navigators' breaches, Smith Insurance and Dwight Smith have suffered damages described herein.

**WHEREFORE,** Plaintiffs pray for this Court to issue a Judgment:

a. Declaring that Navigators has a duty to defend Plaintiffs in The Palmetto Automotive Suits filed against them.

b. Declaring that Navigators must indemnify Plaintiffs for any judgment obtained in The

Palmetto Automotive Suits against them;

c.  Declaring that Navigators must pay Plaintiffs all attorneys' fees and costs incurred by

Plaintiffs in defense of The Palmetto Automotive Suits, including settlement costs and

any pre-judgment interest;

d.  Awarding actual and punitive damages for the costs of this action;

e.  Awarding attorney's fees and costs in this action;

f.  Awarding such other and further relief as the Court deems just and proper.


                                        Respectfully submitted,

The Melonakos Law Firm, LLC         /s/ Michael Melonakos_____
416 E. North St.                    Michael Melonakos
Greenville, SC 29602                Attorney for Defendants
(864) 485-5555 – Office             South Carolina Bar No: 100387
(864) 752-1600 – Fax

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENVILLE | ) OF THE THIRTEENTH CIRCUIT |
| | ) |
| DWIGHT H. SMITH and THE SMITH | ) DOCKET NO. |
| INSURANCE AGENCY, INC., | ) |
| | ) |
| PLAINTIFFS, | ) **SUMMONS** |
| | ) |
| vs. | ) |
| | ) |
| NAVIGATORS INSURANCE COMPANY, | ) |
| | ) |
| DEFENDANT. | ) |

TO: The Defendant Named Above

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your written response to said Complaint on Plaintiffs' counsel at The Melonakos Law Firm, LLC, 416 E. North St., Greenville, SC 29601 within thirty (30) days after the date of service hereof, exclusive of the day of service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

Respectfully submitted,

The Melonakos Law Firm, LLC          /s/ Michael Melonakos
416 E. North St.                     Michael Melonakos
Greenville, SC 29602                 Attorney for Defendants
(864) 485-5555 – Office              South Carolina Bar No: 100387
(864) 752-1600 – Fax

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**Navigators Insurance Company**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

This policy applies to those claims that are first made against the insured and reported in writing to the company during the policy period. Please Read this policy carefully.

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY DECLARATIONS

**Policy Number: PH15IAP516824IV Renewal of: PH14IAP516824IV**

Producer Name and Address:
All Risks, Ltd.
10150 York Rd
5th Floor
Hunt Valley, MD 21030-3354

1. Named Insured: The Smith Agency Inc dba Alfred L. Smith Co
2. Address:
   219 N Pleasanburg Drive
   Greenville, SC 29607

3. Policy Period:    From: June 12, 2015 To: June 12, 2016
   12:01 A.M. Standard Time at the address of the Named Insured as stated in Number 2 above.

4. Limits Of Liability:
   A.    $2,000,000 Damages Limit of Liability - Each Claim
   B.    $2,000,000 Claim Expenses Limit of Liability - Each Claim
   C.    $2,000,000 Damages Limit of Liability - Policy Aggregate
   D.    $2,000,000 Claim Expenses Limit of Liability - Policy Aggregate

5. Deductible (Inclusive of claims expenses): $ 2,500 Each Claim

6. Premium: $ 4,722.00

7. Retroactive Date (if applicable): June 12, 2010

8. Forms And Endorsements Attached At Policy Effective Date:
   NAV IAP NIC PF (01 12)        NAV IAP 300 SC (06 09)        NAV-ML-002 (11/12)

9. Notices To Be Sent:

   Report a Claim                              Material Changes

   Navigators Insurance Company                All Risks, Ltd.
   One Penn Plaza, 32nd Floor                  10150 York Rd
   New York, NY 10119                          5th Floor
   212-613-4300 - fax                          Hunt Valley, MD 21030-3354

NAV IAP DEC (06 09)


PLAINTIFF'S EXHIBIT
A

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**IN WITNESS WHEREOF,** we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative.

[Emily Miner]
**SECRETARY**

[Stanley A. Galanski]
**PRESIDENT**

Navigators
Insuring A World In Motion

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

# NAVIGATORS INSURANCE COMPANY

A "Stock" Company
Home Office: One Penn Plaza, New York, NY 10119

## THIS IS A CLAIMS MADE AND REPORTED POLICY.
## PLEASE READ THE ENTIRE POLICY CAREFULLY.

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILTY POLICY

Words and phrases that appear in **bold** print have special meanings that are defined in section **III., DEFINITIONS**.

I.   **INSURING AGREEMENTS**

A.   **Coverage**

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or **extended reporting period** (if applicable) by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by someone for whom the **Insured** is legally responsible, provided that:

1.   No such act or omission, or **related act or omission**, was committed prior to the **retroactive date;** and

2.   Prior to the inception date of the first policy issued by the **Company**, and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**.

B.   **Defense**

The **Company** has the right and duly to defend any **claim** against the **Insured** even if any of the allegations of the **claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Company** or, at the **Company's** option, by the **Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

C.   **Settlement**

The **Company** will have the right to make, with the consent of the **Named Insured**, any settlement of a **claim** under this policy. If the **Named Insured** refuses to consent to a settlement within the policy's applicable **damages** limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's damages** limit of liability under this policy will be reduced to the amount of **damages** for which the **claim** could have been settled.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**D.  Exhaustion of Limits**

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the **damages** limit of liability has been exhausted, or after the **Company** has deposited the remaining **damages** limit of liability into a court of competent jurisdiction or tendered the remaining **damages** limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**, regardless of whether the **claim expenses** limit of liability has been exhausted.

## II.  LIMITS OF LIABILITY AND DEDUCTIBLE

**A.  Damages Limit of Liability - Each Claim**

Subject to paragraph C. below, the **Company's** limit of liability for **damages** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in item 4A. in the Declarations for "**Damages** Limit of Liability - Each **Claim**."

**B.  Claim expenses Limit of Liability - Each Claim**

Subject to paragraph D. below, the **Company's** limit of liability for **claim expenses** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in item 4B. in the Declarations for "**Claim expenses** Limit of Liability - Each **Claim**."

**C.  Damages Limit of Liability - Policy Aggregate**

The **Company's** limit of liability for **damages** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in item 4C. in the Declarations as the "**Damages** Limit of Liability - Policy Aggregate."

**D.  Claim expenses Limit of Liability - Policy Aggregate**

The **Company's** limit of liability for **claim expenses** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in item 4D. in the Declarations as the "**Claim expenses** Limit of Liability - Policy Aggregate."

**E.  Deductible**

**1.**  The deductible amount shown in item 5. in the Declarations is the **Insured's** obligation for each **claim** and applies to the payment of **damages** and **claim expenses**. The deductible will be paid by the **Named Insured**. The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

**2.**  If a **claim** is resolved by settlement, with the consent of the **Named Insured** and the **Company**, within one (1) year following the date that the **claim** is reported in writing to the **Company**, the **Named Insured** will be reimbursed or credited 50% of the deductible, but not to exceed a reimbursement of $10,000 per **claim** and $25,000 per **policy period** for all such **claims** resolved or concluded in accordance with this section II.E.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

3.  The **Named Insured's** obligation to pay the deductible amount stated in item 5. in the Declarations will be reduced by 10% following each consecutive twelve month period in which the **Company** pays no **claim expenses** or **damages** under this policy, but not to exceed the lesser of 50% or $10,000 each **claim**.  This reduction will not apply to any **extended reporting period**.

If both E. 2 and 3 above apply, only one reduction applies.

**F.   Multiple Insureds, Claims and Claimants**

The limits of liability for **damages** and **claim expenses** shown in the Declarations is the maximum amount the **Company** will pay under this policy for **damages** and **claim expenses**, respectively, regardless of the number of **Insureds**, **claims** made or claimants. All **related claims,** whenever made, shall be considered a single **claim** first made when the earliest of the **related claims** was first made and first reported when the earliest of the **related claims** was reported in writing to the **Company**; provided, however, that the **Insured** must report all **claims** as soon as reasonable in accordance with Condition A.1.

**G.   Multiple Policies**

If this policy and any other policy issued by the **Company** provide coverage for the same **claim** against the **Insured**, the maximum limit of liability under all the policies combined shall not exceed the highest remaining applicable limit of liability for the **claim** under any one policy.

**H.   Supplementary Payments**

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

**1.   Reimbursement of Expenses**

The **Company** will pay up to $500.00 for loss of earnings to the **Insured** for each day or part of a day the **Insured** is in attendance, at the **Company's** request, at a trial, hearing, mediation or arbitration proceeding involving a **claim** against the **Insured**. The maximum amount payable, regardless of the number of trials, hearings, mediations or arbitration proceedings or the number of **Insureds** shall be $7,500 per **claim** and $25,000 per **policy period**.

**2.   Disciplinary Actions**

The **Company** will reimburse the **Insured** for reasonable attorneys' fees, costs and expenses incurred in responding to a **disciplinary action** first received by the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act, error or omission in the performance of **professional services**. The maximum amount payable, regardless of the number of **disciplinary actions** or the number of **Insureds**, shall be $25,000 per **policy period**.  The **Company** shall not be obligated to defend any **disciplinary action**, or pay any fine, penalty or award resulting from any **disciplinary action**.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

3.  **Subpoena Expenses**

    The **Company** will pay expenses incurred while assisting the **Insured** in responding to a subpoena which the **Insured** first receives and reports in writing to the **Company** during the **policy period** resulting from the performance of **professional services** by the **Insured.** The maximum amount payable for subpoena expenses is $5,000 per subpoena; provided, however, that all subpoenas arising out of **related acts or omissions** shall be deemed to constitute a single subpoena.

4.  **Employment Practices Claims Expenses**

    If during the **policy period** allegations are first made against the **Named Insured** for **wrongful employment practices** which took place on or after the **retroactive date** stated in the declarations, and reported to the **Company** during the **policy period,** the **Company** will reimburse the **Named Insured** for reasonable and necessary attorney's fees incurred in responding to such allegations. The maximum the **Company** will pay pursuant to this Supplemental Payment shall be $25,000 for each **policy period.** Coverage afforded by this provision will be excess of any other valid or collectable insurance and the **Company** shall not pay **damages** pursuant to this provision.

5.  **Reimbursement for Security Incident**

    The **Company** will reimburse the **Named Insured** for any **security incident** response expenses up to a maximum of $10,000 per **security incident** and $25,000 per **policy period. Security incident** response expenses are any expenses incurred by the **Insured** to:

    a.  Hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

    b.  Comply with state or local privacy laws requiring that notification and credit monitoring services are to be provided to individuals when the security, confidentiality, or integrity of their personal information has been compromised.

## III. DEFINITIONS

A.  **Bodily injury** means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. **Bodily injury** also means mental illness, mental anguish, emotional distress, pain, suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

B.  **Claim** means a demand for money or services received by the **Insured** arising out of an act or omission in the performance of **professional services.** A **claim** also includes the service of suit or the institution of an arbitration proceeding against the **Insured**.

C.  **Claim expenses** means:

    1.  Fees charged by attorneys designated by the **Company** or designated by the **Insured** with the **Company's** prior written consent;

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

2.  All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a **claim**, if incurred by the **Company** or by the **Insured** with the **Company's** prior written consent; and

3.  Premiums on appeal bonds, attachment bonds or similar bonds; provided, however, the **Company** is not obligated to apply for or furnish any such bond.

**Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company**, or salaries, loss of earnings or other remuneration by or to any **Insured**.

D.  **Company** means the insurance company named in the Declarations.

E.  **Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company's** written consent. **Damages** also includes punitive or exemplary amounts, to the extent such amounts are insurable under the applicable state law.

**Damages** do not include:

1.  The return, reduction or restitution of fees, commissions, expenses or costs for **professional services** performed or to be performed by the **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by the **Insured.**

2.  Fines, penalties, forfeitures or sanctions;

3.  The multiplied portion of any multiplied awards; or

4.  Injunctive or declaratory relief.

F.  **Disciplinary action** means an action brought against the **Insured** by any insurance regulatory agency, disciplinary board, peer review committee or similar entity alleging misconduct in providing **professional services**. **Disciplinary action** does not include criminal charges.

G.  **Extended reporting period** means the period of time after the end of the **policy period** for reporting **claims** to the **Company** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission, which was committed prior to the end of the **policy period** and on, or subsequent to, the **retroactive date** and is otherwise covered by this policy.

H.  **Insured** means:

1.  The **Named Insured**;

2.  Any **predecessor firm**;

3.  Any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor of the **Named Insured**, but only for **claims** arising from **professional services** performed on behalf of the **Named Insured**; or

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300035

4. The estate, heirs, executors, administrators assigns and legal representatives of the **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only for **claims** arising out of **professional services** performed by or on behalf of the **Named Insured** prior to such **Insured's** death, incapacity, insolvency or bankruptcy

I. **Named Insured** means the persons or entities specified in item 1. in the Declarations.

J. **Personal injury** means injury other than **bodily injury** arising out of one or more of the following offenses by reason of an act or omission by the **Insured** in the performance of **professional services**:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. a. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   b. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   Except, in either case, oral or written publication in any manner which arises out of advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

K. **Policy period** means the period of time from the effective date shown in item 3. in the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

L. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. **Predecessor firm** means any partnership, professional association, limited liability partnership, limited liability corporation or corporation, which has undergone dissolution, and:

1. The **Named Insured** is the majority successor in interest to the financial assets and liabilities; and

2. At least 51% of the agents in such firm became an owner, partner, officer, director, Stockholder-employee, or other employee of the **Named Insured.**

N. **Property damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

    **2.** Loss of use of tangible property that is not physically injured.

**O.** **Professional services** means any of the following services if performed for others in the **Insured's** capacity as a licensed insurance agent or broker:

    **1.** marketing, selling and servicing of insurance policies;
    **2.** insurance or employee benefits consulting and risk management or loss control services provided in conjunction with policies the **Insured** places or seeks to place;
    **3.** services as an expert witness on insurance related matters;
    **4.** premium financing activities;
    **5.** services as a notary;
    **6.** services as a teacher for accredited insurance related courses.

**P.** **Related claims** means all **claims** arising out of a single act or omission or **related acts or omissions** in the performance of **professional services**.

**Q.** **Related acts or omissions** means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**R.** **Retroactive date** means the date shown in item 7. in the Declarations.

**S.** **Security incident** means the unauthorized access to, or use of data containing private or confidential information in connection with the performance of **professional services** which results in the violation of any privacy regulation.

**T.** **Wrongful Employment Practices** means one or more of the following that is actual or alleged against the **Named Insured** in the **Named Insured's** conduct as an employer:

    1. Wrongful Termination of an employee;
    2. Retaliation by the **Named Insured** against an employee;
    3. Employment related libel, slander, false arrest , humiliation, negligent infliction of emotional distress, defamation or invasion of privacy against an employee;
    4. Employment related sexual or other workplace harassment, including quid pro quo, and hostile work environment;
    5. Employment discrimination;
    6. Violation of the Family Medical Leave Act (FMLA) alleged by an employee;
    7. Violation of an employee's civil rights relating to any of the above.

## IV. EXCLUSIONS

The **Company** will not defend or pay any **claim**:

**A.** Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the **Insured**. The **Company** will provide the **Insured** with a defense of such **claim** unless and until such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission has been determined by any final adjudication, finding of fact or admission by the **Insured**. Such defense will not waive any of the **Company's** rights under this policy. Upon establishment that the dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the **Insured** was committed, the **Company** will have the right to seek recovery of the **claim expenses** incurred from the **Insured** found to have committed the acts or omissions.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**B.** Seeking **damages** for **bodily injury** or **property damage**;

**C.** Based on or arising out of discrimination, humiliation, harassment, or misconduct. Including, but not limited to, **claims** based on allegations relating to an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. This exclusion shall not apply to **wrongful employment practices**;

**D.** Based on or arising out of **professional services** performed for or by any business enterprise not named in item 1. in the Declarations if, on or after the date or time of the act or omission giving rise to such **claim**:

   **1.** Any **Insured** controlled, owned, operated or managed such entity; or

   **2.** Any **Insured** was an owner, partner, member, director, officer or employee of such entity.

   Control of, or ownership in a business enterprise is established if any **Insured,** or all **Insureds** collectively, owned or held, directly or indirectly, more than 10% of the equity and/or debt instruments of such enterprise;

**E.** By or on behalf of the **Insured** against any other **Insured** under this policy unless such **claim** arises out of **professional services** rendered by such other **Insured** in a professional /client relationship with the **Insured** making the **claim**. This exclusion shall not apply to **wrongful employment practices**;

**F.** Based on or arising out of the **Insured's** activities as a fiduciary or plan administrator under the Employee Retirement Income Security Act of 1974 (ERISA), the Pension Benefits Act or the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) including any amendments to each, or under any similar governmental statue or regulation;

**G.** Based on or arising out of the **Insured's** activities as a third party administrator, whether or not the **Insured** receives a fee or other consideration;

**H.** Based on or arising out of any **claim** alleging the **Insured** is liable for the cost of:

   **1.** The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of **pollutants**; or

   **2.** Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **pollutants**;

**I.** Based on or arising out of liability assumed by any **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

**J.** Based on or arising out of the loss or destruction of or diminution in the value of any asset in the **Insured's** care, custody or control or out of the misappropriation of or failure to give an account of any asset in the **Insured's** care custody or control, including the commingling of funds;

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**K.** Based on or arising from the insolvency or other legal or regulatory impairment resulting in the inability or failure of any insurer or other risk bearing entity for who the **Insured** sold policies to fulfill its obligations, financial or otherwise, to its policyholders. This exclusion will not apply if, at the time of placement of coverage, the entity maintained an A.M. Best rating of B+ or higher;

**L.** Based on arising out of misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

**M.** Based on or arising out of the placement or the alleged failure to place any reinsurance;

**N.** Based on or arising out of the sale, or failure to sell, any securities other than variable life insurance or variable annuities;

**O.** Based on or arising out of the ownership, operation, administration or insolvency of any:

Healthcare organization including HMO's or PPO's; Risk Retention Group, Captive Insurer or Self Insurance Programs; or Multi-Employer Trusts. This exclusion will not apply to the Insolvency of any Healthcare organization including HMO's or PPO's if, at the time of placement of coverage, the entity maintained an A.M. Best rating of B+ or higher;

**P.** Based on or arising out of the guarantee of any future premium payment, or any investment result, yield or return, or any tax advice or consequence relating to any products the **Insured** sells or advice the **Insured** gives.

## V. CONDITIONS

### A. Reporting of Claims and Potential Claims:

1. The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice to the **Company** as soon as reasonable of any **claim** made against the **Insured.**

2. If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with full particulars, including:

   a. The specific act or omission;

   b. The dates and persons involved;

   c. The identity of anticipated or possible claimants;

   d. The circumstances by which the **Insured** first became aware of the possible **claim**; and

   e. Potential damages or injury.

   Then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

3. Notices pursuant to Conditions A.1 and A.2 must be mailed to the **Company** at the following address:

> Navigators Pro – Claims Department
> One Penn Plaza, 32nd Floor
> New York, NY  10119
> 212-613-4300 – Fax
> navproclaims@navg.com

## B. Claim Reporting Grace Period

This policy will provide coverage for **claims** that are first made against the **Insured** during the **policy period** and reported by the **Insured** in writing to the **Company** within thirty (30) days after the expiration of the **policy period**, provided that prior to the expiration of this policy, the **Insured** was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due.

The **claim** reporting grace period does not extend the **policy period**.

## C. Assistance and Cooperation

1. The **Insured** will cooperate with the **Company** and upon the **Company's** request, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a **claim**.

2. The **Insured** will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.

3. The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Company**. The **Company** shall have no obligation to pay or reimburse any person or entity for sums expended to defend any **claim** otherwise covered under this Policy prior to written notice of such **claim** being received by the **Company**.

## D. Action against the Company

1. No action may be brought against the **Company** unless, as a condition precedent thereto:

   a. The **Insured** has fully complied with all the terms of this policy; and

   b. Until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial and appeal or by written agreement of the **Insured**, the claimant and the **Company**.

2. Nothing contained in this policy will give any person or organization the right to join the **Company** as a defendant or co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

NAV IAP NIC PF (01 12)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**E.  Bankruptcy**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the **Company** of any of its obligations hereunder.

**F.  Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance.

**G.  Subrogation**

In the event of any payment for any **claim** under this policy, the **Company** will be subrogated in the amount of such payment to all the **Insured's** rights of recovery against any person or organization. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

**H.  Changes**

Notice to any agent of the **Company** or knowledge possessed by any such agent or by any other person will not effect a waiver or a change in any part of this policy, and will not prevent or preclude the **Company** from asserting or invoking any right or provision of this policy. None of the provisions of this policy may be waived, changed or modified except by a written endorsement issued by the **Company** to form a part of this policy.

**I.  Cancellation/Nonrenewal**

1.  This policy may be cancelled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this policy by giving written notice to the **Company** stating at what future date cancellation is to be effective.

2.  The **Company** may cancel or non-renew this policy by sending written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the **Company** cancels this policy because the **Insured** has failed to pay a premium when due, this policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than 10 days thereafter, such cancellation will be effective. The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the **policy period**. Delivery of such written notice either by the **Named Insured** or by the **Company** will be equivalent to mailing.

3.  If the **Company** cancels this policy, the earned premium will be computed pro rata. If the **Named Insured** cancels this policy, the **Company** will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4.  The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this policy.

NAV IAP NIC PF (01 12)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**J.   Territory**

This policy applies to an act or omission taking place anywhere in the world provided that any suit is brought against the **Insured** within the United States of America, its territories or possessions, Puerto Rico or Canada.

**K.   Named Insured Sole Agent**

The **Named Insured** will be the sole agent and will act on behalf of all **Insureds** for the purpose of giving or receiving any notices, any amendments to or cancellation of this policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this policy, for the payment of the deductible and the exercising or declining to exercise any right under this policy including the purchase of an **extended reporting period** under Section VI., paragraph B. of this policy.

**L.   Entire Contract**

By acceptance of this policy the **Insured** warrants that:

1.   All of the information and statements provided to the **Company** by the **Insured**, including, but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the **Insured**;

2.   This policy is issued in reliance upon the **Insured's** representations;

3.   This policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company,** embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4.   Any material misrepresentation or concealment by the **Insured** or the **Insured's** agent will render the policy null and void and relieve the **Company** from all liability herein

**M.   Notices**

Any notices required to be given by the **Insured** will be submitted in writing to the **Company** or its authorized representative at the address specified in the Declarations. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

**N.   Assignment**

No assignment of interest of the **Insured** under this policy is valid, unless the **Company's** written consent is endorsed hereon.

**O.   Innocent Insured**

If coverage of this policy would not apply because of Exclusion A. or because of noncompliance with Condition A.1, such exclusion or condition will not apply to any

NAV IAP NIC PF (01 12)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**Insured** who did not commit, participate in, or have knowledge of any of the acts described in Exclusion A. and whose conduct did not violate Condition A.1.

**P.  Acquisitions and Mergers, and Other Material Changes**

In the event of any merger, acquisition, or change in a franchise relationship, involving the **Named Insured**, or other material changes in the **Named Insured's** operations, there will be no coverage under this policy for any merger, acquisition, or material change until the change has been accepted in writing by the **Company** and the appropriate premium has been determined by the **Company**. Premium will be calculated in accordance with the **Company's** rules, rates, rating plans, premiums, and minimum premiums applicable to the insurance afforded herein.

**Q.  Liberalization**

If the **Company** obtains approval for any amended state filing that would broaden coverage under this policy form NAV IAP NIC PF (01 12) without additional premium at any time during the current **policy period**, the broadened coverage will immediately apply to this policy, except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

## VI.  EXTENDED REPORTING PERIODS

**A.  Automatic Extended Reporting Period**

If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of insurance agents and brokers professional liability insurance within sixty (60) days of the termination of the **policy period**. This automatic **extended reporting period** will terminate after sixty (60) days.

**B.  Optional Extended Reporting Period**

1.  If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **extended reporting period** of one, three or five years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:

    a.  Written notice to the **Company**; and

    b.  With the written notice, the amount of additional premium described below.

2.  The non-refundable additional premium for the optional **extended reporting period** shall be:

    a.  For a one (1) year **extended reporting period**, 90% of the annual premium for the policy; or

    b.  For a three (3) year **extended reporting period**, 160% of the annual premium for the policy; or

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

     **c.** For a five (5) year **extended reporting period,** 200% of the annual premium for the policy.

     **3.** The first sixty (60) days of the optional **extended reporting period,** if it is purchased, shall run concurrently with the automatic **extended reporting period.**

## C. Death or Disability Reporting Period Option

In the event that a designated principal, partner or owner of the **Named Insured** dies or becomes permanently and totally disabled during the **policy period,** and having been continuously insured by the **Company** on a claims-made basis for a minimum of 5 years, and the **Named Insured** cancels or fails to renew this policy due to dissolution of the firm an unlimited **extended reporting period** will be granted at no additional premium, provided that:

     **1.** Within sixty (60) days of the death or permanent and total disability, the **Named Insured** or the estate of the designated principal, partner or owner of the **Named Insured** requests the unlimited **extended reporting period**; and

     **2.** The estate of the designated principal, partner or owner of the **Named Insured** furnishes written evidence and proof of the designated principal, partner or owner of the **Named Insured's** death; or

     **3.** The designated principal, partner or owner of the **Named Insured** provides evidence and proof of the permanent and total disability, including the date of the actual disability and written certification by the attending physician.

## D. Retirement Reporting Period Option

     **1.** If a designated principal, partner or owner of the **Named Insured** reaches the age of 65, and having been continuously insured by the **Company** on a claims-made basis for a minimum of 5 years, the designated principal, partner or owner of the **Named Insured** retires and the **Named Insured** cancels or fails to renew this policy due to dissolution of the firm, an unlimited **extended reporting period** will be granted at no additional premium; or

     **2.** If a designated principal, partner or owner of the **Named Insured** retires from active business during the **policy period** and the **Named Insured** cancels or fails to renew this policy due to dissolution of the firm, an unlimited **extended reporting period** can be purchased for a non-refundable additional premium of 250% of annual premium.

Such right must be exercised by the **Named Insured** within sixty (60) days of the retirement by providing:

     **a.** Written notice to the **Company**; and

     **b.** With the written notice, if applicable, the amount of additional premium described in Item D.2. above.

## E. Extended Reporting Period Limits of Liability

The **damages** limit of liability and **claim expenses** limit of liability of the **Company** for all **claims** reported during the automatic and optional **extended reporting periods** will

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

be part of and not in addition to the **damages** limit of liability and **claim expenses** limit of liability, respectively, for the **policy period** set forth in item 4. in the Declarations.

**F.    Elimination of Right to Any Extended Reporting Period**

There is no right to any **extended reporting period** if the **Company** cancels or refuses to renew this policy due to:

1.    Nonpayment of amounts due under this policy;

2.    Noncompliance by the **Insured** with any of the terms and conditions of this policy;

3.    Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Insured** for this policy.

**G.    Extended Reporting Period - Not a New Policy**

The **extended reporting period** will not be construed to be a new policy and any **claim** submitted during such period will otherwise be governed by this policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

## Navigators Insurance Company

| Named Insured: | Policy Number: | Endorsement Number: | Effective Date: |
|---|---|---|---|
| The Smith Agency Inc dba Alfred L. Smith Co | PH15IAP516824IV | 1 | Jun 12, 2015 12:01am |

## SOUTH CAROLINA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY

Section **V. CONDITIONS**, paragraph **I. Cancellation/Nonrenewal** is deleted in its entirety and replaced with the following:

### I. Cancellation/Nonrenewal

1. **Cancellation**

   a. The **Named Insured** may cancel this policy by surrendering it to the **Company** or any of their authorized agents or by mailing to the **Company** written notice stating when the cancellation shall be effective.

   b. If this policy has been in effect for less than 90 days and is not a renewal of a previously existing policy, this policy may be cancelled by the **Company** for any reason by delivering or mailing to the **Named Insured** at the address shown in this policy, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. Where the reason for cancellation is nonpayment of premium however, not less than 10 days written notice shall be furnished by the **Company**.

   c. If this policy has been in effect for 90 days, or is a renewal of a policy the **Company** issued, this policy may be cancelled by the **Company** by delivering or mailing to the **Named Insured** and the agent of record, if any, at the address shown in the policy, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. Where the reason for cancellation is nonpayment of premium however, not less than 10 days written notice shall be furnished by the **Company**. Cancellation under this paragraph shall be based on one or more of the following reasons:

      i. Nonpayment of premium;

      ii. Material misrepresentation of fact which, if known to the **Company**, would have caused the **Company** not to issue the policy;

      iii. Substantial change in the risk assumed, except to the extent the **Company** should reasonably have foreseen the change or contemplated the risk in writing the policy;

      iv. Substantial breaches of contractual duties, conditions, or warranties;

      v. Loss of the **Company's** reinsurance covering all or a significant portion of the particular policy insured; or

      vi. Where continuation of the policy would imperil the **Company's** solvency or place the **Company** in violation of the insurance law of this state.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

d. Any notice of cancellation will state the precise reason for cancellation. Prior to cancellation for reasons numbered v. and vi. above, the **Company** shall notify the Director of Insurance in writing at least 60 days prior to the effective date of such cancellation.

e. If this policy was written or renewed on or after June 11, 2007 and it is cancelled for a reason other than the reasons listed in i., ii., iii., iv., and v. above, the following apply:

    i. 60 days notice is required if cancellation is issued between November 1st and May 31st; or

    ii. 90 days notice is required if cancellation is issued between June 1st and October 31st.

## 2. Nonrenewal

a. If the **Company** intends to renew a policy, the **Company** shall furnish renewal terms and a statement of the amount of premium or estimated premium due for the renewal policy period .

b. If the **Company** decides to renew this policy the renewal terms and statement of premium or estimated premium due shall be furnished to the **Named Insured** not less than 30 days prior to the expiration date of the original policy.

c. The **Company** will send a written notice of nonrenewal to the **Named Insured**:

    i. 60 days prior to the expiration date of the policy for any nonrenewal that would be effective between November 1st and May 31st; or

    ii. 90 days prior to the expiration date of the policy for any nonrenewal that would be effective between June 1st and October 31st.

d. The **Company** may satisfy their obligation to furnish renewal terms and statement of premium or estimated premium due by either of the following methods:

    i. Mailing or delivering renewal terms and statement to the **Named Insured** at the **Named Insured's** address shown in the policy or, if not reflected therein, at the **Named Insured's** last known address, not less than 30 days prior to expiration or anniversary; or

    ii. Mailing or delivering renewal terms and statement to the agent of record, if any, not less than 45 days prior to the expiration or anniversary, along with instruction that the agent furnish the renewal terms and statement to the **Named Insured** not less than 30 days prior to expiration or anniversary.

e. If the **Company** fails to furnish the renewal terms and statement of premium or restated premium due, the **Named Insured** may elect to cancel the renewal policy within the 30 day period following receipt of the renewal terms and statement of premium or estimated premium due. Earned premium for any period of coverage shall be calculated pro rata based upon the premium applicable to the original policy and not the premium applicable to the renewal policy.

All other terms and conditions of this policy remain unchanged.

NAV IAP 300 SC (06 09)

OFAC ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department/Es Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

NAV-ML-002 (11/12)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

☒ NAVIGATORS INSURANCE COMPANY (NIC)
☐ NAVIGATORS SPECIALTY INSURANCE COMPANY (NSIC)

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.     PLEASE READ THIS POLICY CAREFULLY.

# INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY DECLARATIONS

**POLICY NUMBER:** PH16IAP516824IV
**RENEWAL OF:**    PH15IAP516824IV

**PRODUCER NAME & ADDRESS:**
All Risks, Ltd. (Hunt Valley, MD)
Hunt Valley, MD
USA

1.  **NAMED INSURED:**
    The Smith Agency Inc dba Alfred L. Smith Co
2.  **ADDRESS:**
    219 N Pleasantburg Drive
    Greenville, SC 29607

3.  **POLICY PERIOD: FROM:** June 12, 2016 **TO:** June 12, 2017
    12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4.  **LIMITS OF LIABILITY:**
    A.    $2,000,000    **Damages** Limit of Liability - Each **Claim**
    B.    $2,000,000    **Claim Expenses** Limit of Liability - Each **Claim**
    C.    $2,000,000    **Damages** Limit of Liability - Policy Aggregate
    D.    $2,000,000    **Claim Expenses** Limit of Liability - Policy Aggregate

5.  **DEDUCTIBLE** : $2,500 **(each claim, including claim expenses)**

6.  **PREMIUM: $5,379**

7.  **RETROACTIVE DATE** (if applicable): June 12, 2010

8.  **FORMS AND ENDORSEMENTS ATTACHED AT POLICY EFFECTIVE DATE:**
    NAV IAP DEC (06 09)     NAV IAP NIC PF (01 12)     NAV IAP 300 SC (06 09)
    NAV-ML-002 (11 12)     NAV IAP 040 (08/15)     NAV IAP 036 (08 15)





NAV IAP DEC (06 09)                    1

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

9.    **NOTICES TO BE SENT:**

<u>Report a Claim</u>                                  <u>Material Changes</u>

**Navigators Insurance Company**          **Navigators Insurance Company**
**One Penn Plaza, 32nd floor**              **One Penn Plaza, 32nd floor**
**New York, NY 10119**                    **New York, NY 10119**
**212-613-4300 - Fax**                    **212-613-4300 - Fax**

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

_____

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary and countersigned by our duly authorized representative.**

[Emily Miner]
Secretary

[Stanley A. Galanski]
President

Navigators
*Insuring A World In Motion*

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

# NAVIGATORS INSURANCE COMPANY

A "Stock" Company
Home Office: One Penn Plaza, New York, NY 10119

## THIS IS A CLAIMS MADE AND REPORTED POLICY.
## PLEASE READ THE ENTIRE POLICY CAREFULLY.

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILTY POLICY

Words and phrases that appear in **bold** print have special meanings that are defined in section **III., DEFINITIONS** .

I.  **INSURING AGREEMENTS**

A.  **Coverage**

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or **extended reporting period** (if applicable) by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by someone for whom the **Insured** is legally responsible, provided that:

1.  No such act or omission, or **related act or omission**, was committed prior to the **retroactive date;** and

2.  Prior to the inception date of the first policy issued by the **Company**, and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**.

B.  **Defense**

The **Company** has the right and duty to defend any **claim** against the **Insured** even if any of the allegations of the **claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Company** or, at the **Company's** option, by the **Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

C.  **Settlement**

The **Company** will have the right to make, with the consent of the **Named Insured,** any settlement of a **claim** under this policy. If the **Named Insured** refuses to consent to a settlement within the policy's applicable **damages** limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's damages** limit of liability under this policy will be reduced to the amount of **damages** for which the **claim** could have been settled.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**D. Exhaustion of Limits**

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the **damages** limit of liability has been exhausted, or after the **Company** has deposited the remaining **damages** limit of liability into a court of competent jurisdiction or tendered the remaining **damages** limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured,** regardless of whether the **claim expenses** limit of liability has been exhausted.

## II.  LIMITS OF LIABILITY AND DEDUCTIBLE

**A.  Damages Limit of Liability - Each Claim**

Subject to paragraph C. below, the **Company's** limit of liability for **damages** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in item 4A. in the Declarations for " **Damages** Limit of Liability - Each **Claim** . "

**B.  Claim expenses Limit of Liability - Each Claim**

Subject to paragraph D. below, the **Company's** limit of liability for **claim expenses** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in item 4B. in the Declarations for " **Claim expenses** Limit of Liability - Each **Claim** . "

**C.  Damages Limit of Liability - Policy Aggregate**

The **Company's** limit of liability for **damages** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in item 4C. in the Declarations as the " **Damages** Limit of Liability - Policy Aggregate."

**D.  Claim expenses Limit of Liability - Policy Aggregate**

The **Company's** limit of liability for **claim expenses** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in item 4D. in the Declarations as the " **Claim expenses** Limit of Liability - Policy Aggregate."

**E.  Deductible**

1.  The deductible amount shown in item 5. in the Declarations is the **Insured's** obligation for each **claim** and applies to the payment of **damages** and **claim expenses** . The deductible will be paid by the **Named Insured** . The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

2.  If a **claim** is resolved by settlement, with the consent of the **Named Insured** and the **Company,** within one (1) year following the date that the **claim** is reported in writing to the **Company** , the **Named Insured** will be reimbursed or credited 50% of the deductible, but not to exceed a reimbursement of $10,000 per **claim** and $25,000 per **policy period** for all such **claims** resolved or concluded in accordance with this section II.E.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

3. The **Named Insured's** obligation to pay the deductible amount stated in item 5. in the Declarations will be reduced by 10% following each consecutive twelve month period in which the **Company** pays no **claim expenses** or **damages** under this policy, but not to exceed the lesser of 50% or $10,000 each **claim**. This reduction will not apply to any **extended reporting period.**

If both E. 2 and 3 above apply, only one reduction applies.

**F. Multiple Insureds, Claims and Claimants**

The limits of liability for **damages** and **claim expenses** shown in the Declarations is the maximum amount the **Company** will pay under this policy for **damages** and **claim expenses**, respectively, regardless of the number of **Insureds**, **claims** made or claimants. All **related claims,** whenever made, shall be considered a single **claim** first made when the earliest of the **related claims** was first made and first reported when the earliest of the **related claims** was reported in writing to the **Company;** provided, however, that the **Insured** must report all **claims** as soon as reasonable in accordance with Condition A.1.

**G. Multiple Policies**

If this policy and any other policy issued by the **Company** provide coverage for the same **claim** against the **Insured,** the maximum limit of liability under all the policies combined shall not exceed the highest remaining applicable limit of liability for the **claim** under any one policy.

**H. Supplementary Payments**

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

**1. Reimbursement of Expenses**

The **Company** will pay up to $500.00 for loss of earnings to the **Insured** for each day or part of a day the **Insured** is in attendance, at the **Company's** request, at a trial, hearing, mediation or arbitration proceeding involving a **claim** against the **Insured**. The maximum amount payable, regardless of the number of trials, hearings, mediations or arbitration proceedings or the number of **Insureds** shall be $7,500 per **claim** and $25,000 per **policy period**.

**2. Disciplinary Actions**

The **Company** will reimburse the **Insured** for reasonable attorneys' fees, costs and expenses incurred in responding to a **disciplinary action** first received by the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act, error or omission in the performance of **professional services**. The maximum amount payable, regardless of the number of **disciplinary actions** or the number of **Insureds**, shall be $25,000 per **policy period**. The **Company** shall not be obligated to defend any **disciplinary action**, or pay any fine, penalty or award resulting from any **disciplinary action**.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

3. **Subpoena Expenses**

The **Company** will pay expenses incurred while assisting the **Insured** in responding to a subpoena which the **Insured** first receives and reports in writing to the **Company** during the **policy period** resulting from the performance of **professional services** by the **Insured.** The maximum amount payable for subpoena expenses is $5,000 per subpoena; provided, however, that all subpoenas arising out of **related acts or omissions** shall be deemed to constitute a single subpoena.

4. **Employment Practices Claims Expenses**

If during the **policy period** allegations are first made against the **Named Insured** for **wrongful employment practices** which took place on or after the **retroactive date** stated in the declarations, and reported to the **Company** during the **policy period,** the **Company** will reimburse the **Named Insured** for reasonable and necessary attorney's fees incurred in responding to such allegations. The maximum the **Company** will pay pursuant to this Supplemental Payment shall be $25,000 for each **policy period.** Coverage afforded by this provision will be excess of any other valid or collectable insurance and the **Company** shall not pay **damages** pursuant to this provision.

5. **Reimbursement for Security Incident**

The **Company** will reimburse the **Named Insured** for any **security incident** response expenses up to a maximum of $10,000 per **security incident** and $25,000 per **policy period. Security incident** response expenses are any expenses incurred by the **Insured** to:

   a. Hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

   b. Comply with state or local privacy laws requiring that notification and credit monitoring services are to be provided to individuals when the security, confidentiality, or integrity of their personal information has been compromised.

## III. DEFINITIONS

A. **Bodily injury** means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. **Bodily injury** also means mental illness, mental anguish, emotional distress, pain, suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

B. **Claim** means a demand for money or services received by the **Insured** arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit or the institution of an arbitration proceeding against the **Insured**.

C. **Claim expenses** means:

   1. Fees charged by attorneys designated by the **Company** or designated by the **Insured** with the **Company's** prior written consent;

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

2. All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a **claim** , if incurred by the **Company** or by the **Insured** with the **Company's** prior written consent; and

3. Premiums on appeal bonds, attachment bonds or similar bonds; provided, however, the **Company** is not obligated to apply for or furnish any such bond.

**Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company** , or salaries, loss of earnings or other remuneration by or to any **Insured** .

D. **Company** means the insurance company named in the Declarations.

E. **Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company's** written consent. **Damages** also includes punitive or exemplary amounts, to the extent such amounts are insurable under the applicable state law.

**Damages** do not include:

1. The return, reduction or restitution of fees, commissions, expenses or costs for **professional services** performed or to be performed by the **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by the **Insured.**

2. Fines, penalties, forfeitures or sanctions;

3. The multiplied portion of any multiplied awards; or

4. Injunctive or declaratory relief.

F. **Disciplinary action** means an action brought against the **Insured** by any insurance regulatory agency, disciplinary board, peer review committee or similar entity alleging misconduct in providing **professional services** . **Disciplinary action** does not include criminal charges.

G. **Extended reporting period** means the period of time after the end of the **policy period** for reporting **claims** to the **Company** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission, which was committed prior to the end of the **policy period** and on, or subsequent to, the **retroactive date** and is otherwise covered by this policy.

H. **Insured** means:

1. The **Named Insured;**

2. Any **predecessor firm;**

3. Any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor of the **Named Insured** , but only for **claims** arising from **professional services** performed on behalf of the **Named Insured** ; or

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

4. The estate, heirs, executors, administrators assigns and legal representatives of the **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only for **claims** arising out of **professional services** performed by or on behalf of the **Named Insured** prior to such **Insured's** death, incapacity, insolvency or bankruptcy

I. **Named Insured** means the persons or entities specified in item 1. in the Declarations.

J. **Personal injury** means injury other than **bodily injury** arising out of one or more of the following offenses by reason of an act or omission by the **Insured** in the performance of **professional services** :

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. a. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   b. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   Except, in either case, oral or written publication in any manner which arises out of advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

K. **Policy period** means the period of time from the effective date shown in item 3. in the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

L. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. **Predecessor firm** means any partnership, professional association, limited liability partnership, limited liability corporation or corporation, which has undergone dissolution, and:

1. The **Named Insured** is the majority successor in interest to the financial assets and liabilities; and

2. At least 51% of the agents in such firm became an owner, partner, officer, director, Stockholder-employee, or other employee of the **Named Insured.**

N. **Property damage** means:

1. Physical Injury to tangible property, including all resulting loss of use of that property; or

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

2. Loss of use of tangible property that is not physically injured.

O. **Professional services** means any of the following services if performed for others in the **Insured's** capacity as a licensed insurance agent or broker:

   1. marketing, selling and servicing of insurance policies;
   2. insurance or employee benefits consulting and risk management or loss control services provided in conjunction with policies the **Insured** places or seeks to place;
   3. services as an expert witness on insurance related matters;
   4. premium financing activities;
   5. services as a notary;
   6. services as a teacher for accredited insurance related courses.

P. **Related claims** means all **claims** arising out of a single act or omission or **related acts or omissions** in the performance of **professional services**.

Q. **Related acts or omissions** means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

R. **Retroactive date** means the date shown in item 7. in the Declarations.

S. **Security incident** means the unauthorized access to, or use of data containing private or confidential information in connection with the performance of **professional services** which results in the violation of any privacy regulation.

T. **Wrongful Employment Practices** means one or more of the following that is actual or alleged against the **Named Insured** in the **Named Insured's** conduct as an employer:

   1. Wrongful Termination of an employee;
   2. Retaliation by the **Named Insured** against an employee;
   3. Employment related libel, slander, false arrest , humiliation, negligent infliction of emotional distress, defamation or invasion of privacy against an employee;
   4. Employment related sexual or other workplace harassment, including quid pro quo, and hostile work environment;
   5. Employment discrimination;
   6. Violation of the Family Medical Leave Act (FMLA) alleged by an employee;
   7. Violation of an employee's civil rights relating to any of the above.

## IV. EXCLUSIONS

The **Company** will not defend or pay any **claim** :

A. Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the **Insured**. The **Company** will provide the **Insured** with a defense of such **claim** unless and until such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission has been determined by any final adjudication, finding of fact or admission by the **Insured** . Such defense will not waive any of the **Company's** rights under this policy. Upon establishment that the dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the **Insured** was committed, the **Company** will have the right to seek recovery of the **claim expenses** incurred from the **Insured** found to have committed the acts or omissions.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

B. Seeking **damages** for **bodily injury** or **property damage** ;

C. Based on or arising out of discrimination, humiliation, harassment, or misconduct. Including, but not limited to, **claims** based on allegations relating to an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. This exclusion shall not apply to **wrongful employment practices** ;

D. Based on or arising out of **professional services** performed for or by any business enterprise not named in item 1. in the Declarations if, on or after the date or time of the act or omission giving rise to such **claim** :

   1. Any **Insured** controlled, owned, operated or managed such entity; or

   2. Any **Insured** was an owner, partner, member, director, officer or employee of such entity.

   Control of, or ownership in a business enterprise is established if any **Insured,** or all **Insureds** collectively, owned or held, directly or indirectly, more than 10% of the equity and/or debt instruments of such enterprise;

E. By or on behalf of the **Insured** against any other **Insured** under this policy unless such **claim** arises out of **professional services** rendered by such other **Insured** in a professional /client relationship with the **Insured** making the **claim** . This exclusion shall not apply to **wrongful employment practices** ;

F. Based on or arising out of the **Insured's** activities as a fiduciary or plan administrator under the Employee Retirement Income Security Act of 1974 (ERISA), the Pension Benefits Act or the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) including any amendments to each, or under any similar governmental statue or regulation;

G. Based on or arising out of the **Insured's** activities as a third party administrator, whether or not the **Insured** receives a fee or other consideration;

H. Based on or arising out of any **claim** alleging the **Insured** is liable for the cost of:

   1. The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of **pollutants** ; or

   2. Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **pollutants** ;

I. Based on or arising out of liability assumed by any **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

J. Based on or arising out of the loss or destruction of or diminution in the value of any asset in the **Insured's** care, custody or control or out of the misappropriation of or failure to give an account of any asset in the **Insured's** care custody or control, including the commingling of funds;

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**K.** Based on or arising from the insolvency or other legal or regulatory impairment resulting in the inability or failure of any insurer or other risk bearing entity for who the **Insured** sold policies to fulfill its obligations, financial or otherwise, to its policyholders. This exclusion will not apply if, at the time of placement of coverage, the entity maintained an A.M. Best rating of B+ or higher;

**L.** Based on arising out of misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

**M.** Based on or arising out of the placement or the alleged failure to place any reinsurance;

**N.** Based on or arising out of the sale, or failure to sell, any securities other than variable life insurance or variable annuities;

**O.** Based on or arising out of the ownership, operation, administration or insolvency of any:

Healthcare organization including HMO's or PPO's; Risk Retention Group, Captive Insurer or Self Insurance Programs; or Multi-Employer Trusts. This exclusion will not apply to the Insolvency of any Healthcare organization including HMO's or PPO's if, at the time of placement of coverage, the entity maintained an A.M. Best rating of B+ or higher;

**P.** Based on or arising out of the guarantee of any future premium payment, or any investment result, yield or return, or any tax advice or consequence relating to any products the **Insured** sells or advice the **Insured** gives.

**V. CONDITIONS**

**A. Reporting of Claims and Potential Claims:**

**1.** The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice to the **Company** as soon as reasonable of any **claim** made against the **Insured.**

**2.** If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with full particulars, including:

**a.** The specific act or omission;

**b.** The dates and persons involved;

**c.** The identity of anticipated or possible claimants;

**d.** The circumstances by which the **Insured** first became aware of the possible **claim** ; and

**e.** Potential damages or injury.

Then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

3. Notices pursuant to Conditions A.1 and A.2 must be mailed to the **Company** at the following address:

Navigators Pro – Claims Department
One Penn Plaza, 32nd Floor
New York, NY 10119
212-613-4300 – Fax
navproclaims@navg.com

**B. Claim Reporting Grace Period**

This policy will provide coverage for **claims** that are first made against the **Insured** during the **policy period** and reported by the **Insured** in writing to the **Company** within thirty (30) days after the expiration of the **policy period** , provided that prior to the expiration of this policy, the **Insured** was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due.

The **claim** reporting grace period does not extend the **policy period** .

**C. Assistance and Cooperation**

1. The **Insured** will cooperate with the **Company** and upon the **Company's** request, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a **claim** .

2. The **Insured** will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim** .

3. The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Company**. The **Company** shall have no obligation to pay or reimburse any person or entity for sums expended to defend any **claim** otherwise covered under this Policy prior to written notice of such **claim** being received by the **Company**.

**D. Action against the Company**

1. No action may be brought against the **Company** unless, as a condition precedent thereto:

   a. The **Insured** has fully complied with all the terms of this policy; and

   b. Until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial and appeal or by written agreement of the **Insured** , the claimant and the **Company** .

2. Nothing contained in this policy will give any person or organization the right to join the **Company** as a defendant or co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**E. Bankruptcy**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the **Company** of any of its obligations hereunder.

**F. Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance.

**G. Subrogation**

In the event of any payment for any **claim** under this policy, the **Company** will be subrogated in the amount of such payment to all the **Insured's** rights of recovery against any person or organization. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

**H. Changes**

Notice to any agent of the **Company** or knowledge possessed by any such agent or by any other person will not effect a waiver or a change in any part of this policy, and will not prevent or preclude the **Company** from asserting or invoking any right or provision of this policy. None of the provisions of this policy may be waived, changed or modified except by a written endorsement issued by the **Company** to form a part of this policy.

**I. Cancellation/Nonrenewal**

1. This policy may be cancelled by the **Named Insured** by returning it to the **Company** . The **Named Insured** may also cancel this policy by giving written notice to the **Company** stating at what future date cancellation is to be effective.

2. The **Company** may cancel or non-renew this policy by sending written notice to the **Named Insured** at the address last known to the **Company** . The **Company** will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the **Company** cancels this policy because the **Insured** has failed to pay a premium when due, this policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than 10 days thereafter, such cancellation will be effective. The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the **policy period** . Delivery of such written notice either by the **Named Insured** or by the **Company** will be equivalent to mailing.

3. If the **Company** cancels this policy, the earned premium will be computed pro rata. If the **Named Insured** cancels this policy, the **Company** will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**J.  Territory**

This policy applies to an act or omission taking place anywhere in the world provided that any suit is brought against the **Insured** within the United States of America, its territories or possessions, Puerto Rico or Canada.

**K.  Named Insured Sole Agent**

The **Named Insured** will be the sole agent and will act on behalf of all **Insureds** for the purpose of giving or receiving any notices, any amendments to or cancellation of this policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this policy, for the payment of the deductible and the exercising or declining to exercise any right under this policy including the purchase of an **extended reporting period** under Section VI., paragraph B. of this policy.

**L.  Entire Contract**

By acceptance of this policy the **Insured** warrants that:

1.  All of the information and statements provided to the **Company** by the **Insured**, including, but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the **Insured**;

2.  This policy is issued in reliance upon the **Insured's** representations;

3.  This policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company,** embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4.  Any material misrepresentation or concealment by the **Insured** or the **Insured's** agent will render the policy null and void and relieve the **Company** from all liability herein

**M.  Notices**

Any notices required to be given by the **Insured** will be submitted in writing to the **Company** or its authorized representative at the address specified in the Declarations. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

**N.  Assignment**

No assignment of interest of the **Insured** under this policy is valid, unless the **Company's** written consent is endorsed hereon.

**O.  Innocent Insured**

If coverage of this policy would not apply because of Exclusion A. or because of noncompliance with Condition A.1, such exclusion or condition will not apply to any

**Insured** who did not commit, participate in, or have knowledge of any of the acts described in Exclusion A. and whose conduct did not violate Condition A.1.

P. **Acquisitions and Mergers, and Other Material Changes**

In the event of any merger, acquisition, or change in a franchise relationship, involving the **Named Insured**, or other material changes in the **Named Insured's** operations, there will be no coverage under this policy for any merger, acquisition, or material change until the change has been accepted in writing by the **Company** and the appropriate premium has been determined by the **Company**. Premium will be calculated in accordance with the **Company's** rules, rates, rating plans, premiums, and minimum premiums applicable to the insurance afforded herein.

Q. **Liberalization**

If the **Company** obtains approval for any amended state filing that would broaden coverage under this policy form NAV IAP NIC PF (01 12) without additional premium at any time during the current **policy period**, the broadened coverage will immediately apply to this policy, except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

## VI. EXTENDED REPORTING PERIODS

A. **Automatic Extended Reporting Period**

If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of insurance agents and brokers professional liability insurance within sixty (60) days of the termination of the **policy period**. This automatic **extended reporting period** will terminate after sixty (60) days.

B. **Optional Extended Reporting Period**

1. If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **extended reporting period** of one, three or five years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:

   a. Written notice to the **Company**; and

   b. With the written notice, the amount of additional premium described below.

2. The non-refundable additional premium for the optional **extended reporting period** shall be:

   a. For a one (1) year **extended reporting period**, 90% of the annual premium for the policy; or

   b. For a three (3) year **extended reporting period**, 160% of the annual premium for the policy; or

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

    **c.** For a five (5) year **extended reporting period,** 200% of the annual premium for the policy.

  **3.** The first sixty (60) days of the optional **extended reporting period**, if it is purchased, shall run concurrently with the automatic **extended reporting period**.

## C. Death or Disability Reporting Period Option

In the event that a designated principal, partner or owner of the **Named Insured** dies or becomes permanently and totally disabled during the **policy period**, and having been continuously insured by the **Company** on a claims-made basis for a minimum of 5 years, and the **Named Insured** cancels or fails to renew this policy due to dissolution of the firm, an unlimited **extended reporting period** will be granted at no additional premium, provided that:

  **1.** Within sixty (60) days of the death or permanent and total disability, the **Named Insured** or the estate of the designated principal, partner or owner of the **Named Insured** requests the unlimited **extended reporting period**; and

  **2.** The estate of the designated principal, partner or owner of the **Named Insured** furnishes written evidence and proof of the designated principal, partner or owner of the **Named Insured's** death; or

  **3.** The designated principal, partner or owner of the **Named Insured** provides evidence and proof of the permanent and total disability, including the date of the actual disability and written certification by the attending physician.

## D. Retirement Reporting Period Option

  **1.** If a designated principal, partner or owner of the **Named Insured** reaches the age of 65, and having been continuously insured by the **Company** on a claims-made basis for a minimum of 5 years, the designated principal, partner or owner of the **Named Insured** retires and the **Named Insured** cancels or fails to renew this policy due to dissolution of the firm, an unlimited **extended reporting period** will be granted at no additional premium; or

  **2.** If a designated principal, partner or owner of the **Named Insured** retires from active business during the **policy period** and the **Named Insured** cancels or fails to renew this policy due to dissolution of the firm, an unlimited **extended reporting period** can be purchased for a non-refundable additional premium of 250% of annual premium.

Such right must be exercised by the **Named Insured** within sixty (60) days of the retirement by providing:

    **a.** Written notice to the **Company**; and

    **b.** With the written notice, if applicable, the amount of additional premium described in Item D.2. above.

## E. Extended Reporting Period Limits of Liability

The **damages** limit of liability and **claim expenses** limit of liability of the **Company** for all **claims** reported during the automatic and optional **extended reporting periods** will

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

be part of and not in addition to the **damages** limit of liability and **claim expenses** limit of liability, respectively, for the **policy period** set forth in item 4. in the Declarations.

**F.   Elimination of Right to Any Extended Reporting Period**

There is no right to any **extended reporting period** if the **Company** cancels or refuses to renew this policy due to:

1.   Nonpayment of amounts due under this policy;

2.   Noncompliance by the **Insured** with any of the terms and conditions of this policy;

3.   Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Insured** for this policy.

**G.  Extended Reporting Period - Not a New Policy**

The **extended reporting period** will not be construed to be a new policy and any **claim** submitted during such period will otherwise be governed by this policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

| Named Insured: | Policy Number: | Endorsement Number: | Effective Date: |
|---|---|---|---|
| The Smith Agency Inc dba Alfred L. Smith Co | PH16IAP516824IV | 1 | 06/12/2016 12:01AM |

# SOUTH CAROLINA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

# INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY

Section **V. CONDITIONS**, paragraph **I. Cancellation/Nonrenewal** is deleted in its entirety and replaced with the following:

I. **Cancellation/Nonrenewal**

1. **Cancellation**

   a. The **Named Insured** may cancel this policy by surrendering it to the **Company** or any of their authorized agents or by mailing to the **Company** written notice stating when the cancellation shall be effective.

   b. If this policy has been in effect for less than 90 days and is not a renewal of a previously existing policy, this policy may be cancelled by the **Company** for any reason by delivering or mailing to the **Named Insured** at the address shown in this policy, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. Where the reason for cancellation is nonpayment of premium however, not less than 10 days written notice shall be furnished by the **Company**.

   c. If this policy has been in effect for 90 days, or is a renewal of a policy the **Company** issued, this policy may be cancelled by the **Company** by delivering or mailing to the **Named Insured** and the agent of record, if any, at the address shown in the policy, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. Where the reason for cancellation is nonpayment of premium however, not less than 10 days written notice shall be furnished by the **Company**. Cancellation under this paragraph shall be based on one or more of the following reasons:

      i. Nonpayment of premium;

      ii. Material misrepresentation of fact which, if known to the **Company**, would have caused the **Company** not to issue the policy;

      iii. Substantial change in the risk assumed, except to the extent the **Company** should reasonably have foreseen the change or contemplated the risk in writing the policy;

      iv. Substantial breaches of contractual duties, conditions, or warranties;

      v. Loss of the **Company's** reinsurance covering all or a significant portion of the particular policy insured; or

      vi. Where continuation of the policy would imperil the **Company's** solvency or place the **Company** in violation of the insurance law of this state.

   d. Any notice of cancellation will state the precise reason for cancellation. Prior to cancellation for reasons numbered v. and vi. above, the **Company** shall notify the Director of Insurance in writing at least 60 days prior to the effective date of such cancellation.

NAV IAP 300 SC (06 09)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

e.  If this policy was written or renewed on or after June 11, 2007 and it is cancelled for a reason other than the reasons listed in i., ii., iii., iv., and v. above, the following apply:

   i.  60 days notice is required if cancellation is issued between November 1st and May 31st; or

   ii.  90 days notice is required if cancellation is issued between June 1st and October 31st.

2.  **Nonrenewal**

   a.  If the **Company** intends to renew a policy, the **Company** shall furnish renewal terms and a statement of the amount of premium or estimated premium due for the renewal policy period.

   b.  If the **Company** decides to renew this policy the renewal terms and statement of premium or estimated premium due shall be furnished to the **Named Insured** not less than 30 days prior to the expiration date of the original policy.

   c.  The **Company** will send a written notice of nonrenewal to the **Named Insured**:

      i.  60 days prior to the expiration date of the policy for any nonrenewal that would be effective between November 1st and May 31st; or

      ii.  90 days prior to the expiration date of the policy for any nonrenewal that would be effective between June 1st and October 31st.

   d.  The **Company** may satisfy their obligation to furnish renewal terms and statement of premium or estimated premium due by either of the following methods:

      i.  Mailing or delivering renewal terms and statement to the **Named Insured** at the **Named Insured's** address shown in the policy or, if not reflected therein, at the **Named Insured's** last known address, not less than 30 days prior to expiration or anniversary; or

      ii.  Mailing or delivering renewal terms and statement to the agent of record, if any, not less than 45 days prior to the expiration or anniversary, along with instruction that the agent furnish the renewal terms and statement to the **Named Insured** not less than 30 days prior to expiration or anniversary.

   e.  If the **Company** fails to furnish the renewal terms and statement of premium or restated premium due, the **Named Insured** may elect to cancel the renewal policy within the 30 day period following receipt of the renewal terms and statement of premium or estimated premium due. Earned premium for any period of coverage shall be calculated pro rata based upon the premium applicable to the original policy and not the premium applicable to the renewal policy.

All other terms and conditions of this policy remain unchanged.

Page 2 of 2

NAV IAP 300 SC (06 09)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

# OFAC ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### U.S. ECONOMIC AND TRADE SANCTIONS LIMITATIONS CLAUSE

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

The United States of America trade or economic sanctions, laws or regulations shall include, but not be limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms, conditions and exclusions of this Policy remain unchanged.

Page 1 of 1

NAV-ML-002 (11/12)

| Named Insured: | Policy Number: | Endorsement Number: | Effective Date: |
|---|---|---|---|
| The Smith Agency Inc dba Alfred L. Smith Co | PH16IAP516824IV | 3 | 06/12/2016 12:01AM |

# INSOLVENCY AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY

In consideration of the premium charged it is understood and agreed that the Policy is amended as follows:

It is agreed that Section **IV. EXCLUSIONS**, paragraph K. of this policy, is removed and replaced with the following:

K.    Based on or arising from the insolvency or other legal or regulatory impairment resulting in the inability or failure of any insurer or other risk bearing entity for who the **Insured** sold policies to fulfill its obligations, financial or otherwise, to its policyholders. This exclusion will not apply if, at the time of placement of coverage, the insurer or risk bearing entity maintained an A.M. Best rating of B+ or higher.

Further, this exclusion will not apply if, at the time of placement of coverage, the insurer or risk bearing entity maintained a Demotech rating of A or better.

All other provisions of this policy remain unchanged.

NAV IAP 040 (08 15)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

| Named Insured: | Policy Number: | Endorsement Number: | Effective Date: |
|---|---|---|---|
| The Smith Agency Inc dba Alfred L. Smith Co | PH16IAP516824IV | 4 | 06/12/2016 12:01AM |

## SUPPLEMENTARY PAYMENTS –

## PROFESSIONAL REPUTATION PROTECTION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

### INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY

In consideration of the premium charged, Section **II. LIMITS OF LIABILITY AND DEDUCTIBLE, paragraph H. Supplementary Payments** is amended to add the following:

6. **Professional Reputation Protection Expenses**

The company will pay up to $10,000 per **Policy period** for **Professional Reputation Protection Expenses** paid for by the **Named Insured** in response to a **Reputation Event** first occurring during the **Policy period** and first reported in writing to the **Company** within 60 days of such **Reputation Event** and during the **Policy period** or automatic **Extended Reporting Period**. The maximum amount payable, regardless of the number of **Reputation Events**, shall be $10,000 per **Policy Period**.

For the purposes of this endorsement:

**Reputation Event** means any act or omission that the **Named Insured** reasonably believes will have an imminent and materially adverse effect on the total revenues of the **Professional services** of the **Named Insured** because of diminished confidence by its customers based upon unfavorable information made available by:

1. Broadcasts on television or radio; or
2. Published both publicly and in writing, whether on paper or in electronic media, provided further that such written media was in general circulation and such electronic media was available to the public on a fully open network that was neither password protected nor restricted from access by any method.

**Professional Reputation Protection Expenses** mean reasonable fees, costs and expenses incurred by the **Named Insured** for consulting services paid to an external public relations firm or crisis management firm, whose engagement is to limit the adverse effects of negative publicity against the **Named Insured** cause by a **Reputation Event**.

All other provisions of this policy remain unchanged.

Page 1 of 1

NAV IAP 036 (08 15)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

## Michael Melonakos

| | |
|---|---|
| **From:** | Steve Wagner <steve@thesmithinsurance.com> |
| **Sent:** | Friday, January 11, 2019 12:28 PM |
| **To:** | Michael Melonakos |
| **Subject:** | FW: E&O Navigators |

**From:** Alex Nix <ANIX@allrisks.com>
**Sent:** Wednesday, March 29, 2017 1:03 PM
**To:** Steve Wagner <steve@thesmithinsurance.com>
**Subject:** RE: Alfred L Smith Co (C:PH16IAP516824IV)

Thanks Steve. Sending this out to market now. Can you please forward loss runs for 2012-2014?

Alex Nix, RPLU
All Risks, LTD
Underwriter – National Programs
P: 800-366-5810 x3019
F: 410-828-8179
C: 443-591-9602
anix@allrisks.com

**From:** Steve Wagner [mailto:steve@thesmithinsurance.com]
**Sent:** Wednesday, March 29, 2017 11:00 AM
**To:** Alex Nix
**Subject:** RE: Alfred L Smith Co (C:PH16IAP516824IV)

Alex

I have attached the application you sent over for an E&O quote

Thanks
Steve

**From:** Alex Nix [mailto:ANIX@allrisks.com]
**Sent:** Monday, March 13, 2017 10:23 AM
**To:** Steve Wagner
**Subject:** Alfred L Smith Co (C:PH16IAP516824IV)



Hi Steve,

I hope that all is well and you enjoyed a nice weekend. Quick note on your agency's E&O. I'm sure you have seen and reviewed the notice of non-renewal provided by the carrier for your policy. I just wanted to touch base on this to address a few items.

1

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Unfortunately, Navigators is exiting the admitted E&O market. However, we have a plenty of options for replacement coverage.

In addition to our exclusive Hiscox program, we have a number of other brokerage/binding markets we will approach to ensure that we find you the best possible value available in the market.

We are committed to you and your agency, and to finding you a good solution for replacement coverage. Attached is the application we will need to get the process started.

Please let me know should you have any questions or concerns, but rest assured you're in good hands.

Alex Nix, RPLU
All Risks, LTD
Underwriter – National Programs
P: 800-366-5810 x3019
F: 410-828-8179
C: 443-591-9602
anix@allrisks.com

= Added via OTL-PLUGIN =
CONTRACTSET: 105198117

This email is intended for the addressee shown. It contains information that is confidential and protected from disclosure. Any dissemination or use of this transmission or its contents by unintended persons is strictly prohibited. If this email relates to placement of coverage, please note that no coverage will be bound and no changes will be made without a written "Confirmation of Insurance", Binder, Endorsement or Reinstatement from our office. Coverage cannot be assumed if you do not receive one of the aforementioned notices.

= Added via OTL-PLUGIN =
CONTRACTSET: 105198117

This email is intended for the addressee shown. It contains information that is confidential and protected from disclosure. Any dissemination or use of this transmission or its contents by unintended persons is strictly prohibited. If this email relates to placement of coverage, please note that no coverage will be bound and no changes will be made without a written "Confirmation of Insurance", Binder, Endorsement or Reinstatement from our office. Coverage cannot be assumed if you do not receive one of the aforementioned notices.

# AGENT/BROKER OF RECORD CHANGE

DATE 2-25-04

PRODUCER
ALFRED L. SMITH CO.
219 N. Pleasantburg Dr.
Greenville, S.C. 29607
(864) 233-8674

CODE: 16802     SUBCODE:
AGENCY CUSTOMER ID:

INSURANCE COMPANY NAME
*Auto Owners Ins. Co.*

| POLICY NUMBER(S) | EFFECTIVE DATE | EXPIRATION DATE | LINE OF BUSINESS |
|---|---|---|---|
| 96 2316·36048424 | 4-26-03 | 4-26-04 | CASUALTY |
| 962316 - 36048424 | 4-26-03 | 4-26-04 | CASUALTY |
| 96-600677·00 | 4-26-03 | 4-26-04 | COMMERL UMBRELLA |
| | | | |
| | | | |
| | | | |

Please be advised that we wish to name _ALFRED L. SMITH CO._

_16802_ as our exclusive representative effective _4-26-04_
CODE #                                              PRODUCER              DATE

for the lines of business shown above, currently in force or submitted by application.

This authorization replaces any other authorization that may have been previously completed for any other insurance representative for the stated lines of business.

☑ Please rescind the _____ day waiting period

☐ There will be no rescission letter

X _[signature]_
INSURED'S SIGNATURE                                  DATE

_____
TITLE (IF APPLICABLE)

_____
COMPANY NAME (IF APPLICABLE)

ACORD 36 (1/98)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300035

PLAINTIFF'S
EXHIBIT
D

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

```
           ISSUE DATE:            TRANSACTION: MANUAL NOTE
           PURGE DATE: 02/17/2010
  ISSUED 04/05 RENEWAL

  NOTE ENTRY DATE: 03/09/2004    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
    LAST ACTIVITY: 03/09/2004       ACTIVITY BY: EBC3913
       ISSUE DATE:                  TRANSACTION: MANUAL NOTE
       PURGE DATE: 03/09/2010
    RECEIVED AOR EFFECTIVE 4/26/04 TO GO FROM 16-0092-00 TO 16-0802-00 (ALFRED
  SMITH). SENT AOR LETTER TO AGENT. TO PROCESSING.

  NOTE ENTRY DATE: 03/15/2004    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
    LAST ACTIVITY: 03/15/2004       ACTIVITY BY: EQD9065
       ISSUE DATE:                  TRANSACTION: MANUAL NOTE
       PURGE DATE: 03/15/2010
  PROC AS LISTED

  NOTE ENTRY DATE: 04/26/2004    CHANGED FROM: 02/13/2004
     REVIEWED DATE: 02/13/2004      REVIEWED BY: EKB5680
    LAST ACTIVITY: 02/13/2004       ACTIVITY BY: EKB5680
       ISSUE DATE: 04/26/2004       FOR TRANS:   EXPIRATION REVIEW
       PURGE DATE: 02/13/2010

  NOTE ENTRY DATE: 03/01/2005    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
    LAST ACTIVITY: 03/01/2005       ACTIVITY BY: EZELL.KIM
       ISSUE DATE:                  TRANSACTION: MANUAL NOTE
       PURGE DATE: 03/01/2011
  NONRENEWED - RQ NOT RECD

  NOTE ENTRY DATE: 04/13/2005    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
    LAST ACTIVITY: 04/13/2005       ACTIVITY BY: EZELL.KIM
       ISSUE DATE:                  TRANSACTION: MANUAL NOTE
       PURGE DATE: 04/13/2011
  RECD RQ - REQUESTED FILE

  NOTE ENTRY DATE: 04/21/2005    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
    LAST ACTIVITY: 04/21/2005       ACTIVITY BY: EZELL.KIM
       ISSUE DATE:                  TRANSACTION: MANUAL NOTE
       PURGE DATE: 04/21/2011
  ISSUED 05/06 RENEWAL

  NOTE ENTRY DATE: 04/26/2005    CHANGED FROM: 02/11/2005
     REVIEWED DATE: 02/11/2005      REVIEWED BY: EZELL.KIM
    LAST ACTIVITY: 02/11/2005       ACTIVITY BY: EZELL.KIM
       ISSUE DATE: 04/26/2005       FOR TRANS:   EXPIRATION REVIEW
       PURGE DATE: 02/11/2011
  F/U SET FOR RQ

  NOTE ENTRY DATE: 03/01/2006    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
    LAST ACTIVITY: 03/01/2006       ACTIVITY BY: EZELL.KIM
       ISSUE DATE:                  TRANSACTION: MANUAL NOTE
       PURGE DATE: 03/01/2012
  NONRENEWED - RQ NOT RECD

  NOTE ENTRY DATE: 03/15/2006    CHANGED FROM:
     REVIEWED DATE:                 REVIEWED BY:
```



PLAINTIFF'S
EXHIBIT
E

DEF 000943

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

June 3, 2002


Mr. Roy Phillips
Insurance Associates, Inc.
P.O. Box 8979
Greenville, SC  29604


Re:   Palmetto Automotive Consultants, Inc.
      #962316 36048424 02
      #96-600-677-00
      Effective 4/26/02 to 4/26/03


Roy:

This is to inform you that there have been no known losses on
the above referenced policies from 4/26/02 to date.

Sincerely,

Ed Pace
President





DEF 000872

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**Cindy Mast**

| | |
|---|---|
| **From:** | Cindy Mast <cindy@thesmithinsurance.com> |
| **Sent:** | Thursday, March 31, 2016 1:54 PM |
| **To:** | 'Auto-Owners Insurance Group' |
| **Subject:** | Palmetto Automotive Consultants, Inc. / 36048424 and 96-600-677-00 |
| **Attachments:** | XFM9967.pdf; 20160331105513056.pdf |

Attached please find a general liability claim for the above insured along with the lawsuit papers he received. Please process.

Thanks,
Cindy Mast
Alfred L Smith Co
219 N Pleasantburg Dr
Greenville, SC 29607
p. 864.233.8674
f. 864.233.9232
Cindy@thesmithinsurance.com

The information contained in this email and any attachments may be privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by calling (864) 233-8674 and delete this email and any related attachments.



DEF 0303

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

# ACORD® GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM

**DATE (MM/DD/YYYY)** 03/31/2016

**AGENCY**
Alfred L Smith Co
219 North Pleasantburg Drive
Greenville, SC 29607

**INSURED LOCATION CODE**

**DATE OF LOSS AND TIME** 04/01/2014    ☐ AM  ☐ PM

**CARRIER** Auto-Owners Insurance Company

**NAIC CODE** 18988

**CONTACT NAME:** CindyMast

**POLICY NUMBER** 36048424 / 96-600-677-00

**PHONE (A/C, No, Ext):** (864) 233-8674

**FAX (A/C, No):** 864-233-9232

**E-MAIL ADDRESS:** Cindy@thesmithinsuance.com

**CODE:**

**AGENCY CUSTOMER ID:**    **SUBCODE:**

## INSURED

**NAME OF INSURED (First, Middle, Last)**
Palmetto Automotive Consultants Inc

**INSURED'S MAILING ADDRESS**
P.O. Box 27081
Greenville, SC 29616

**DATE OF BIRTH**    **FEIN (if applicable)**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL    **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL
(864) 238-0881

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

## CONTACT    ☐ CONTACT INSURED

**NAME OF CONTACT (First, Middle, Last)**
Ed Pace

**CONTACT'S MAILING ADDRESS**
P.O. Box 27081
Greenville, SC 29616

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☑ CELL    **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL
864-238-0881

**WHEN TO CONTACT**
Anytime

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

## OCCURRENCE

**LOCATION OF OCCURRENCE**

**STREET:** 118 Creekside Road

**POLICE OR FIRE DEPARTMENT CONTACTED**

**CITY, STATE, ZIP:** Greenville, SC 29651

**COUNTRY:**

**REPORT NUMBER**

**DESCRIBE LOCATION OF OCCURRENCE IF NOT AT SPECIFIC STREET ADDRESS:**

**DESCRIPTION OF OCCURRENCE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**
Insured's are independent reps who sell automotive financial products to automobile dealers include gap insurance. Lawsuit alleges that gap insurance was sold to buyers and claims were not paid. Per our insured Performance Automotive was responsible for administering claims and procuring reinsurance which was provided by Lloyds of London

## TYPE OF LIABILITY

**PREMISES: INSURED IS** ☑ OWNER    ☐ TENANT

**TYPE OF PREMISES**

**OWNER'S NAME & ADDRESS (if not insured)**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL    **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

**PRODUCTS: INSURED IS** ☐ MANUFACTURER    ☐ VENDOR

**MANUFACTURER'S NAME & ADDRESS (if not insured)**

**TYPE OF PRODUCT**
Financial Products

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☑ CELL    **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL
864-238-0881

**PRIMARY E-MAIL ADDRESS:**

**WHERE CAN PRODUCT BE SEEN?**

**SECONDARY E-MAIL ADDRESS:**

**ACORD 3 (2011/07)**

© 1986-2011 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

DEF 0304

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

## INJURED / PROPERTY DAMAGED

**NAME & ADDRESS (Injured/Owner)**
See Law suit

**AGENCY CUSTOMER ID:** _____

**EMPLOYER'S NAME & ADDRESS**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

| AGE | SEX | OCCUPATION |
|-----|-----|------------|

**WHERE TAKEN**

**DESCRIBE PROPERTY (Type, model, etc.)**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

**DESCRIBE INJURY**

**WHAT WAS INJURED DOING?**

**ESTIMATE AMOUNT** | **WHERE CAN PROPERTY BE SEEN?**

## WITNESSES

**NAME AND ADDRESS**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

**NAME AND ADDRESS**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

**NAME AND ADDRESS**

**PRIMARY PHONE #** ☐ HOME ☐ BUS ☐ CELL   **SECONDARY PHONE #** ☐ HOME ☐ BUS ☐ CELL

**PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:**

## REMARKS (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

**REPORTED BY**
Ed Pace

**REPORTED TO**
Cindy Mast

ACORD 3 (2011/07)

Page 2 of 4

DEF 0305

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br><br>CHARLESTON COUNTY )<br> )<br> )<br>McElveen Buick GMC, Inc., Economy )<br>Cars, LLC, TruAuto, Inc., and Lowcountry )<br>Credit Inc., )<br> )<br>            Plaintiffs, )<br> )<br>   vs. )<br> )<br>Edward Pace, Michael Perkins, Palmetto )<br>Automotive Consultants, Inc., Jason )<br>Fletcher, Partners Alliance Corporation, )<br>Performance Automotive Management, Inc.,) <br>f/k/a Performance Automotive Management,)<br>LLC, and Patrick Brown, )<br> )<br>            Defendants. )<br> ) | In the Court of Common Pleas<br>For the Ninth Judicial Circuit<br>Case No. 2015-CP-10-_____<br><br><br><br><br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiffs, complaining of Defendants, allege and state as follows:

1.    Plaintiffs McElveen Buick GMC, Inc., Economy Cars, LLC, TruAuto, Inc. and Lowcountry Credit Inc. ("LCC"), are South Carolina corporations doing business in Berkeley and Charleston Counties as automobile dealerships (collectively, the "Dealerships"). Defendants Edward Pace ("Pace") and Michael Perkins ("Perkins") are citizens and residents of Spartanburg County doing business in Charleston County.

2.    Palmetto Automotive Consultants, Inc. ("Palmetto"), is a South Carolina corporation that does business in Charleston County.

3.    Palmetto is in the business of providing insurance and other automotive aftermarket products for sale to automobile purchasers. Upon information and belief, Pace and Perkins are the principals and owners of Palmetto (collectively, "Palmetto Defendants").

4.    Defendant Jason Fletcher ("Fletcher") is a citizen and resident of the State of



ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

California, does business in Charleston County and is licensed as an insurance agent in South Carolina.

5.     Defendant Partners Alliance Corporation ("Partners") is a business organized and existing under the laws of the State of California and doing business in Charleston County, South Carolina. Upon information and belief, Fletcher is the president and owner of Partners and a resident of a state other than South Carolina.

6.     Partners is in the business of marketing and administering credit-related insurance products, including Guaranteed Asset Protection ("GAP") waivers.

7.     A GAP waiver is a supplemental insurance product designed to cover the unpaid balance of an automobile loan in the event of a total loss of the vehicle. Typically, a GAP waiver will cover the difference between the depreciated actual cash value of a lost vehicle and the outstanding loan balance on the vehicle.

8.     Defendant Performance Automotive Management, Inc. f/k/a Performance Automotive Management, LLC ("PAM"), is a corporation organized and existing under the laws of a state other than South Carolina and does business in Charleston County, South Carolina. Upon information and belief, Defendant Patrick Brown ("Brown") is the president and owner of PAM and a resident of a state other than South Carolina.

9.     PAM is in the business of marketing and administering certain automotive aftermarket products, including GAP waivers.

10.     Dealerships own and operate "Buy Here, Pay Here" automobile dealerships that provide affordable vehicles and financing, through LCC, to automobile purchasers who are not eligible for conventional financing due to poor credit histories.

11.     Due to the depreciation of the purchased vehicles and factors associated with their

DEF 0316

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300035

financing, purchasers may desire to buy GAP waivers to cover any discrepancy between the insured values of their cars and their payoffs on the cars in event of property damage or loss, and Plaintiffs provided the option of GAP waivers to their customers.

12.    Because of the financing, the age of the vehicles being bought, and the correlation between bad credit ratings and poor drivers, the losses paid out by the GAP reinsurer were substantial.

13.    In early 2014, Plaintiffs' reinsurance manager informed Plaintiffs that their losses were so extreme that they would have to find another company to provide GAP waiver coverage.

14.    Plaintiffs contacted their agents and brokers, the Palmetto Defendants, to find a suitable GAP product that could be offered to their customers.

15.    Plaintiffs had a long history of using the Palmetto Defendants as their agents and brokers to select and purchase financing and other products offered to their customers.

16.    The Palmetto Defendants hold themselves out to automobile dealerships as having knowledge and expertise in the field of after-market automotive products, and Plaintiffs relied on their knowledge and expertise to secure appropriate products.

17.    On information and belief, the Palmetto Defendants contacted Defendant Fletcher and his company, Partners, and they agreed to provide the product needed by Plaintiffs.

18.    The Palmetto Defendants informed Plaintiffs that they had found the requested GAP waiver product and instructed each of the Dealerships to sign two "Dealer Agreements," one with Defendant Partners and the other with Defendant PAM.

19.    On information and belief, Defendants Fletcher and Partners are agents of PAM.

20.    In reliance on the representations of the Palmetto Defendants as to the suitability of these products and of Partners and PAM, on April 9, 2014, the Dealerships signed the two sets

3

DEF 0317

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

of Dealer Agreements, copies of which are attached hereto as Exhibits A (McElveen Buick GMC, Inc., agreements), B (Economy Cars, LLC, agreements), and C (TruAuto, Inc., agreements).

21.     Pursuant to the Dealer Agreements, Partners was obligated to procure, on behalf of Plaintiffs, insurance from an "A" rated insurance carrier to cover any loss that Plaintiffs might incur as a result of offering the GAP product to their customers. Likewise, the Dealer Agreements with PAM contain the following provision: "PAM agrees that to the extent that any Program is insured, such insurance shall at all times be maintained during the term of this Agreement, and the term of any Program." PAM also was obligated to "forward all claims paper work that it receives in connection with the Programs to the Obligor of each Program."

22.     Beginning in April of 2014, Plaintiffs began selling the GAP product provided to them by Defendants to their customers. A copy of the form used by Plaintiffs is attached hereto as Exhibit D. Typically, a customer would finance the vehicle through LCC and, if a GAP waiver was purchased, assign the benefits of the GAP waiver to LCC, the lienholder.

23.     Plaintiffs remitted the purchase price for the GAP waivers paid by their customers to Defendant Partners, who was acting as the agent of Defendant PAM.

24.     Plaintiffs followed the instructions given to them by Defendants and began submitting claims made under the GAP waivers to Defendant PAM.

25.     During the remainder of 2014, the program worked as explained with Plaintiffs submitting claims to Defendant PAM and receiving payments from Defendant PAM.

26.     Plaintiffs continued to submit the premiums received from customers purchasing GAP waivers, as well as claims for losses, to Defendants in 2015 but did not receive timely payments and began questioning PAM in July, and then Pace, Perkins, Palmetto, Fletcher and

4

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Partners in August.

27.    Plaintiffs continued to submit claims to Defendants Fletcher and Partners through October of 2015 as instructed by Defendant Fletcher.

28.    In or about October of 2015, Defendants Pace and Perkins told Plaintiffs that PAM had apparently gone out of business and could not be contacted.

29.    Plaintiffs contracted with another provider for the GAP reinsurance beginning in or about November of 2015.

30.    Plaintiffs have paid to Defendants Fletcher and Partners all of the money received from customers purchasing the GAP product offered by PAM through its agent, Partners.

31.    Plaintiffs have properly submitted claims presented by customers to Defendants PAM, Fletcher and Partners but these Defendants have failed to remit coverage payments as required under the Dealer Agreements.

## FOR A FIRST CAUSE OF ACTION
### (Negligence against Defendants Pace, Perkins, Palmetto, Fletcher and Partners)

32.    Each of the above allegations is repeated herein.

33.    Defendants Pace, Perkins, Palmetto, Fletcher and Partners owed a duty of competence and skill as the agents and brokers in advising Plaintiffs as to GAP reinsurance and in procuring the GAP reinsurance coverage for Plaintiffs.

34.    On information and belief, these Defendants failed to conduct any investigation into the PAM product or into PAM's operations to determine whether PAM was a responsible and suitable party from which to procure the product.

35.    These Defendants procured and recommended the PAM product to Plaintiffs and represented to them that the PAM product was a good product, that it was identical to the product previously sold, and that it would provide the GAP coverage being sold to customers.

5

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

36.    These Defendants breached the duties owed to Plaintiffs by failing to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business would use under similar circumstances.

37.    As a direct and proximate result of the negligence of Defendants, Plaintiffs have been damaged and will continue to sustain damages as future claims are presented by customers who purchased the GAP coverage offered through Plaintiffs by Defendants.

## FOR A SECOND CAUSE OF ACTION
**(Promissory Estoppel against Palmetto, Pace and Perkins)**

38.    Each of the above allegations is repeated.

39.    Defendants Pace and Perkins, as owners and/or principals of Palmetto, unambiguously promised Plaintiffs that they would arrange for a GAP reinsurance product which would provide the same coverage as the prior product being sold by Plaintiffs.

40.    Plaintiffs reasonably relied on the assurances of Defendants Pace and Perkins as they have special knowledge of automobile aftermarket products, including GAP reinsurance programs and products.

41.    The reliance of Plaintiffs was foreseeable.  Plaintiffs specifically went to these Defendants for the GAP reinsurance product needed, and these Defendants told Plaintiffs that they would procure an appropriate product that was similar to the prior product that Plaintiffs provided to their customers.

42.    As a result of having relied on the representations that an appropriate and suitable GAP reinsurance product had been secured, Plaintiffs did not secure other coverage and incurred damages in the form of premium payments collected from their customers and claims payments that they are not receiving.

43.    Defendants are liable for these damages.

DEF 0320

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

## FOR A THIRD CAUSE OF ACTION
### (Negligent Misrepresentation against Defendants Palmetto, Pace and Perkins)

44.    Each of the above allegations is repeated.

45.    Defendants Pace and Perkins, as owners and/or principals of Palmetto, falsely told Plaintiffs that they had secured a GAP reinsurance product which would provide the same coverage as the prior product being sold by Plaintiffs.

46.    By making the misrepresentation and inducing Plaintiffs to sell the PAM GAP reinsurance product to its customers and remit the premium payments to Defendants, which was other than as promised, Defendants received premium payments, fees and/or commissions.

47.    Defendants owed a duty of care to see that truthful information was communicated to Plaintiffs.

48.    Defendants breached their duty by failing to exercise due care and/or to properly investigate whether Defendant PAM was responsible and was providing the coverage promised.

49.    Plaintiffs justifiably relied on the representations.

50.    As a result of having relied on the representations that GAP reinsurance coverage had been secured, Plaintiffs did not secure other coverage and incurred damages.

51.    Defendants are liable to Plaintiffs for the damages incurred by Plaintiffs.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract against PAM, Brown, Partners, and Fletcher)

52.    Each of the above allegations is repeated.

53.    Each Dealership entered into a contract with both PAM and Partners (see Exhibits A, B, and C).

54.    Both PAM and Partners have breached those contracts by failing to perform their obligations thereunder, including, but not limited to:

DEF 0321

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

a.   failing to procure, on behalf of Plaintiffs, insurance from an "A" rated insurance carrier to cover any loss that Plaintiffs might incur as a result of offering the GAP product to their customers;

b.   failing to pay claims properly presented by Plaintiffs;

c.   failing to maintain a reserve account for Plaintiff's customers; and

d.   failing to maintain insurance during the term of the contracts and the term of the GAP reinsurance sold to customers.

55.    As a result of the various breaches committed by Partners and PAM, through their principals, Fletcher and Brown, respectively, Plaintiffs have been damaged in that they have not received the payments for claims that should have been covered by Defendants. Plaintiffs will continue to be damaged by Defendants' breaches of contract as claims arising from the GAP product sold to customers will continue to be presented to Plaintiffs for waiver of payments owed to LCC.

## FOR A FIFTH CAUSE OF ACTION
### (Fraud against all Defendants)

56.    Each of the above allegations is repeated.

57.    Defendants made material misrepresentations and/or omissions concerning:

a.   the purchase of insurance to cover claims made under the GAP program by Plaintiffs' customers;

b.   services that would be offered to Plaintiffs and their customers by Defendants;

c.   the financial stability of certain Defendants;

d.   the suitability of the GAP product that was being offered and recommended to Plaintiffs by Defendants; and

e.   the ability of Defendants to provide payment of customers' claims.

DEF 0322

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

58.    Defendants knew the misrepresentations were false and intended Plaintiffs to act on those representations. Defendants also purposefully omitted material information that it had a duty to convey to Plaintiffs.

59.    Plaintiffs relied on Defendants' representations and omissions and, as a result of that reliance, entered into the Dealer Agreements.

60.    As a proximate and foreseeable result of Defendants' wrongful conduct, Plaintiffs have suffered, and will continue to suffer, damages.

**FOR A SIXTH CAUSE OF ACTION**
**(Unjust Enrichment against All Defendants)**

61.    Each of the above allegations is repeated.

62.    Plaintiffs conferred benefits upon Defendants, including the payment of premiums and commissions to Defendants.

63.    These Defendants, or one or more of these Defendants, realized these benefits.

64.    Under the circumstances, it would be unjust for Defendants to retain the benefits conferred.

WHEREFORE, Plaintiffs pray that judgment be awarded to it against Defendants jointly and severally for all actual damages, interest to date of payment, consequential damages, and punitive damages as deemed appropriate by the trier of facts herein.

ROSEN, ROSEN & HAGOOD, LLC

By: _____
Alice F. Paylor
Elizabeth J. Palmer
151 Meeting Street, Suite 400
Charleston, SC  29401
(843) 577-6726
ATTORNEYS FOR PLAINTIFFS

Charleston, South Carolina
March 21, 2016

9

DEF 0323

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335



**Willard D. (Bill) Hanna, Jr.** • bill@hannalawpa.com

1661 Glenns Bay Road, Surfside Beach, SC 29575
Phone: 843.651.9000

May 16, 2016

Alfred L. Smith Company
219 N. Pleasantburg Drive
Greenville, SC  29607-2123

> **Re:** **Edward Pace, Michael Perkins and Palmetto Automotive**
> **Consultants, Inc.**
> **Our File No.: 1217-001**

Dear Sirs:

Please be advised that I have been retained to defend Palmetto Automotive Consultants, Inc., and its principals, Michael Perkins and Edward Pace, in a lawsuit filed by McElveen Buick GMC, Inc., Economy Cars, LLC, TruAuto, Inc., and Lowcountry Credit Inc. in the Court of Common Pleas for Charleston County. I enclose a copy of the Complaint for your review.

My clients previously submitted a claim to your office with regard to this litigation, and were told that there was no insurance coverage available to them for the allegations contained in the complaint. After review of the policies that were secured by your company for the protection of my clients, as well as their customers, I would agree.

Since 2005, my clients have looked to your company to secure for them liability insurance which would provide such protection. Despite the fact that your company was fully aware of the nature of my clients' business, you sold my client insurance policies that are totally useless to them and provide them with absolutely no protection.

Alfred L. Smith Company owed a duty of competence and skill as the agents and brokers in advising my clients as to their insurance needs and in procuring coverage which was necessary for their protection. I am, therefore, demanding that Alfred L. Smith Company assume full defense of this action, and agree to indemnify my clients for all actions in this litigation. I would assume that you would put your liability carrier on notice of our demand. In the event that you do not agree to our demand, my clients will fully defend this matter and seek recourse from you and your carrier.

Thank you for your prompt attention herein.



*Certified Mediator and Arbitrator in State and Federal Court*

DEF 0296

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335



**HANNA LAW**

Willard D. (Bill) Hanna, Jr. • bill@hannalawpa.com

**1661 Glenns Bay Road, Surfside Beach, SC 29575**
Phone: 843.651.9000

July 27, 2016

Alfred L. Smith Company
219 N. Pleasantburg Drive
Greenville, SC  29607-2123

     Re:   Edward Pace, Michael Perkins and Palmetto Automotive
             Consultants, Inc.
             Our File No.: 1217-001

Dear Sir:

Over a month ago, demand was made on you to defend and hold harmless my clients in this litigation.  Since that time, there has been no effort on your part to protect my clients' interests.

Please provide me with a written response to our demands or have your errors and omissions carrier contact me within fifteen (15) days.  Your failure to do so will result in litigation being instituted against you.

Thank you for your prompt attention herein.

With kind regards, I remain

Sincerely,

Willard D. Hanna, Jr.

WDHjr/ba

cc:   *Mr. Michael Perkins*
      *Mr. Edward Pace*
      *Palmetto Automotive Consultants, Inc.*

*Certified Mediator and Arbitrator in State and Federal Court*

**PLAINTIFF'S EXHIBIT
J**

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**Cindy Mast**

| | |
|---|---|
| **From:** | Steve Wagner <steve@thesmithinsurance.com> |
| **Sent:** | Tuesday, August 02, 2016 1:45 PM |
| **To:** | 'Bill@hannalawpa.com' |
| **Cc:** | 'Dwight Smith' |
| **Subject:** | File # 1217-001 |

Hi Bill,

In reference to the above file # we will be putting our carrier on notice.  Would kindly give your best estimate as to the cost of the defense.

Regards

Steve Wagner
Alfred L Smith Co
219 N Pleasantburg Dr
Greenville, SC 29607
p. 864.233.8674
f. 864.232.9232


---

The information contained in this email and any attachments may be privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by calling (864) 233-8674 and delete this email and any related attachments.



DEF 0294

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**Cindy Mast**

| | |
|---|---|
| **From:** | Steve Wagner <steve@thesmithinsurance.com> |
| **Sent:** | Wednesday, August 17, 2016 11:20 AM |
| **To:** | Bill@hannalawpa.com |
| **Subject:** | FILE # 1217-001 / Palmetto Automotive Consultants, Inc |

Mr. Hanna

Per my email to you on 8/2/2016 we requested an estimate on the cost of the defense for Palmetto Automotive Consultants. This information is necessary so we can proceed forward on this file. Please advise at your earliest convenience.

Sincerely,

Steve Wagner
The Smith Insurance Agency Inc
219 N Pleasantburg Dr
Greenville, SC 29607
p. 864.233.8674
f. 864.232.9232
www.thesmithinsurance.com

The information contained in this email and any attachments may be privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by calling (864) 233-8674 and delete this email and any related attachments.


PLAINTIFF'S EXHIBIT
L

DEF 0293

1



August 17, 2016

Navigators Insurance Company
One Penn Plaza, 32nd Floor
New York, NY 10119
212-613-4300 – Fax

RE: Policy # PH161AP516824IV

To Whom It May Conern,

This letter is to put Navigators Insurance Company on notice of a possible claim from one of our current clients. Our Client, *Palmetto Automotive Consultants Inc. (along with owners Michael Perkins and Edward Pace)* is being sued for Breach of Contract.

The client is being represented by Hanna Law Firm and Bill Hanna of 1661 Glenns Bay Rd, Surfside Beach, SC 29575.

Please send us confirmation that you have received this letter of notice.

Thank you for your attention to this matter,

The Smith Insurance Agency Inc
219 N Pleasantburg Dr
Greenville, SC 29607
P. 864.233.8674
F. 864.233.9232
info@thesmithinsurance.com



PLAINTIFF'S
EXHIBIT

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

DEF 0292

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300035



**Navigators Pro**
**A Division of Navigators Management Company, Inc.**
**400 Atlantic Street, 8th Floor**
**Stamford, CT 06901**

October 12, 2016

**VIA CERTIFIED MAIL & ELECTRONIC MAIL**

The Smith Agency Inc. dba Alfred L. Smith Co.
219 N. Pleasantburg Drive
Greenville, SC 29607-2123

Attn:  Steve Wagner
       steve@thesmithinsurance.com

Re:   **Insurance Agents and Brokers Professional Liability Insurance Policy**
      *Insured:*        *The Smith Agency Inc. dba Alfred L. Smith Co.*
      *Policy No.:*     *PH16IAP516824IV*
      *Matter:*         *Palmetto Automotive Consultants, Inc.*
      *Claim No.:*      *IAP281215*

Dear Mr. Wagner:

Navigators Insurance Company ("Navigators" or the "Company") was notified of the above-referenced matter on August 30, 2015 involving Palmetto Automotive Consultants, Inc. ("Palmetto") and The Smith Agency Inc. DBA Alfred L. Smith Co. (hereinafter "Alfred L. Smith Co.").

Your correspondence constituted the first notice to Navigators of this matter.  I have been assigned this matter, and ask that you direct all future correspondence to my attention.  Kindly note the above-assigned reference number and please refer to it on all future correspondence. **After careful review of the allegations asserted in this matter, and in light of the provisions of the Policy, we must inform you that there is no coverage available for this matter under the Policy.**  Our position is explained below.  To understand it fully, the Policy should be reviewed with this letter.

## THE NAVIGATORS POLICY

This matter was reported under Navigators' Insurance Agents and Brokers Professional Liability Policy number PH16IAP516824IV issued to The Smith Agency Inc. DBA Alfred L. Smith Co (the "Insured") for the Policy Period of June 12, 2016 to June 12, 2017 (the "Policy").  The Policy



ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Mr. Steve Wagner
October 12, 2015
Page 2 of 5

is written on a claims made and reported basis and contains a Limit of Liability of $2,000,000 per Claim for Damages and a Limit of Liability of $2,000,000 per Claim for Claim Expenses and a $2,000,000 Policy Aggregate for both Damages and Claim Expenses. The Policy includes a $2,500 Deductible for each claim. The Deductible is inclusive of claim expenses.

<u>**FACTS**</u>

The Company is in receipt of correspondence dated August 17, 2016 wherein the Insured states in relevant part:

> This letter is to put Navigators Insurance Company on notice of a possible claim from one of our current clients. Our Client, Palmetto Automotive Consultants, Inc. (along with owners Michael Perkins and Edward pace) is being sued for Breach of Contract. The client is being represented by Hanna Law Firm and Bill Hanna of 1661 Glenns Bay Rd, Surfside Beach, SC 29575.

Thereafter, Alfred L. Smith Co. provided Navigators with correspondence dated May 16, 2016 from Attorney Bill Hanna, Jr. on behalf of Palmetto Automotive Consultants. Inc. ("Demand Letter"). Attorney Hanna states that a lawsuit was filed by McElveen Buick GMC, Inc., Economy Cars, LLC, TruAuto, Inc., and Lowcountry Credit Inc. against Palmetto and its principals in the Court of Common Pleas for Charleston County under case number: 2016-CP-10-01409 (the "lawsuit").

Attorney Hanna alleges that Palmetto submitted a claim with the Alfred L. Smith Co. with regard to the aforementioned lawsuit, and Palmetto was told that there was no insurance coverage available to Palmetto due to the allegations contained in the Complaint. Attorney Hanna asserts s that since 2005 Palmetto Automotive Consultants. Inc. has looked to Alfred L. Smith Co. to secure for them liability insurance. Further it is alleged that Alfred L. Smith Co. was aware of the nature of Palmettos' business and sold them insurance policies that did not provide them with protection. Attorney Hanna demands that:

> "Alfred L. Smith Company assume full defense of this action, and agree to indemnify my clients for all actions in this litigation. I would assume that you would put your liability carrier on notice of our demand. In the event that you do not agree to our demand, my clients will fully defend this matter and seek recourse from you and your carrier." *See* Demand Letter.

Please be aware that by citing these allegations, we are not suggesting that any of the allegations in the Demand Letter have merit or otherwise would give rise to liability on the part of the Insured. Nonetheless, it is important to review them as they relate to the coverage provided by the terms and conditions of the Policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Mr. Steve Wagner
October 12, 2015
Page 3 of 5

## COVERAGE ANALYSIS

Based on our review of the information provided to us to date, it appears that the Policy would not respond with coverage for this matter. At the outset, we point you to Section I. entitled, **"INSURING AGREEMENTS"**, which provides, in pertinent part, that subject to the Limit of Liability, exclusions, conditions and other terms,

A.     **Coverage**

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claims expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or **extended reported period** (if applicable) by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or someone for whom the **Insured** is legally responsible, provided that:

1.     No such act or omission, or **related act or omission**, was committed prior to the **retroactive date**; and

2.     Prior to the inception date of the first policy issued by the **Company**, and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**.

A **claim** is defined as a "demand for money or services naming the **Insured** arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit or the institution of an arbitration proceeding against the **Insured**." (Policy, Section III.)

Based upon information provided Alfred L. Smith Co. first learned of the instant matter upon receipt of the Demand Letter from Palmetto's counsel on or about May 16, 2016. Here, Palmetto demanded that Alfred indemnify Palmetto for all actions in the lawsuit. Accordingly, this constitutes a **claim** under the Policy.

We next direct your attention to Section V.A.1.of the Policy which provides as follows:

1.     The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice to the **Company** as soon as reasonable of any **claim** made against the **Insured**.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Mr. Steve Wagner
October 12, 2015
Page 4 of 5

2.    If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with full particulars, including:

        a.    The specific act or omission;

        b.    The dates and persons involved;

        c.    The identity of anticipated or possible claimants;

        d.    The circumstances by which the **Insured** first became aware of the possible **claim**; and

        e.    Potential damages or injury.

Then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**.

    …

**B. Claim Reporting Grace Period**

This policy will provide coverage for **claims** that are first made against the **Insured** during the **policy period** and reported by the **Insured** in writing to the **Company** within thirty (30) days after the expiration of the **policy period**, provided that prior to the expiration of this policy, the **Insured** was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due.

The **claim** reporting grace period does not extend the **policy period**.

Accordingly, in order for coverage to be potentially available under the 2016-17 Policy, the claim *must be first made and reported* to Navigators during the policy period. Here, the Demand Letter constitutes a claim that was first made during the 2015-16 Policy's policy period when the Insured received the Demand Letter on or about May 16, 2016. However, the claim was not reported to Navigators under the 2015-16 Policy. Rather, the matter was reported on August 30, 2016 which is during the 2016-2017 policy period, and more than 30 days after the expiration of

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Mr. Steve Wagner
October 12, 2015
Page 5 of 5

the 2015-16 policy period.[1] Moreover, it was reasonably possible for Alfred L. Smith Co. to provide notice to Navigators within 30 days of the expiration of the 2015-16 Policy. The materials provided to the undersigned show that the Insured was in contact with Palmetto's counsel after receiving the Demand Letter. It was also reasonably possible for Alfred L. Smith Co. to have provided notice to Navigators at or around the same time. Since Alfred L. Smith Co. failed to do so and did not report the claim until August 30, 2016, coverage for the Demand Letter is not available under the 2015-16 or the 2016-17 Policies.

&ast;       &ast;       &ast;

If you have information or documents that you think would cause Navigators to alter or change its conclusion and determination as stated herein, we request that you forward such information and materials to us immediately. Upon receipt, we will review the information and materials and will advise whether it leads Navigators to alter or modify its stated position.

The fact that this letter does not mention or comment upon other provisions, conditions or exclusions set forth in the 2015-16 Policy is in no way intended to be, nor shall it constitute, a waiver of the applicability of any provisions, conditions, exclusions or defenses that may exist but which are not discussed herein. Indeed, nothing contained herein shall constitute a waiver of any claims, rights, and causes of action, rights of action, defenses, positions or remedies possessed by Navigators, all of which are expressly reserved. Please note that this correspondence should not be construed as an exhaustive listing of all applicable 2015-16 and 2016-2017 Policy provisions. Navigators reserves its rights under the terms, conditions and exclusions of the 2015-16 and 2016-2017 Policies, as well as under applicable law, to rely upon and enforce additional terms of the 2015-16 and 2016-2017 Policies, and disclaim coverage on alternative basis if facts become known which result in the application of other terms, conditions, exclusion, endorsements or other provisions of the 2015-16 and 2016-2017 Policies, including representations, statements, declarations, and/or omissions in connection with the procurement of the 2015-16 and 2016-2017 Policies.

If you have any questions or comments, please do not hesitate to contact me by telephone at 203.905.6515 or by email. Should you have additional documents or information which may impact our coverage evaluation, please forward it to my attention as soon as possible.

Very truly yours,

*Joann D Obi*

Joann D. Obi, Esq.
Claims Counsel
E-mail: jobi@navg.com

---

[1] As mentioned previously, the correspondence received by Navigators was dated August 17, 2016. Nevertheless, even if notification was made to Navigators on August 17, 2016, this date is still more than 30 days after the expiration of the 2015-2016 Policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2016 Nov 21 11:03 AM - GREENVILLE - COMMON PLEAS - CASE#2016CP2306759

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

Clarence Edward Pace, Jr.; Michael Perkins; and
Palmetto Automotive Consultants, Inc.,

Plaintiffs,

vs.

Dwight H. Smith and The Smith Insurance
Agency, Inc.,

Defendants.

IN THE COURT OF COMMON PLEAS
THIRTEENTH JUDICIAL CIRCUIT
CASE NO.: 2016-CP-23-6759

**COMPLAINT**
(Negligence)

**JURY TRIAL DEMANDED**

The Plaintiffs, complaining of the Defendants, would respectfully allege unto this Court
as follows:

1.    Plaintiff Clarence Edward Pace, Jr. is a citizen and resident of Greenville County,
South Carolina; the Plaintiff Michael Perkins is a citizen and resident of Georgetown County,
South Carolina; and the Plaintiff Palmetto Automotive Consultants, Inc. is a corporation
organized and existing pursuant to the laws of the State of South Carolina. The Plaintiffs Pace
and Perkins are the principals of Palmetto.

2.    Defendant Dwight H. Smith (hereinafter referred to as the "Agent") is, upon
information and belief, a licensed insurance agent selling insurance in the State of South
Carolina.

3.    Defendant The Smith Insurance Agency, Inc. (hereinafter referred to as the
"Agency") is, upon information and belief, a licensed insurance agency in the business of selling
insurance in the State of South Carolina.

4.    At all times hereinafter mentioned, the Agent was acting as agent, servant, and/or
employee of the Agency.



ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2016 Nov 21 11:03 AM - GREENVILLE - COMMON PLEAS - CASE#2016CP2306759

5.    Plaintiffs' business consists of acting as a representative for companies that provide F & I products to automobile dealerships in various states.

6.    Plaintiffs had a long history of using the Defendants as their agent and broker to select insurance for protection against liability arising out of the operation of its business.

7.    Defendants held themselves out to have knowledge and expertise is the selection and procurement of policies to fit the Plaintiffs' business needs.

8.    Defendants were fully aware of the nature of the Plaintiffs' business, the risks inherent in the operation of that business, and the potential risks and liabilities.

9.    Plaintiffs relied on the Defendants to select and provide them with insurance that fit their business needs.

10.    Based on the Defendants' superior knowledge in the field of commercial business liability and their long-standing relationship, the Defendants had a duty to select and provide the business insurance needs of the Plaintiffs, and the Plaintiffs relied upon same.

11.    On March 21, 2016, suit was instituted against the Plaintiffs arising out of the Plaintiffs' normal business and operation.

12.    Plaintiffs promptly notified the Defendants of the litigation, and were notified that there was no coverage in effect to provide protection for the Plaintiffs.

13.    Plaintiffs were notified that the only policy of insurance in effect for the company and useless for a company like the Plaintiffs.

14.    Plaintiffs have demanded that the Defendants take over the defense of the action filed against them, and that they be held harmless and indemnified by the Defendants.  The Defendants have failed and refused to respond to said demand.

15.    Defendants owed a duty of competence and skill as the agent and broker in advising Plaintiffs and in procuring coverage for the Plaintiffs.

16.    Defendants recommended and procured for the Plaintiffs a product that would provide adequate insurance for Plaintiffs' needs.

17.    Defendants breached the duties owed to Plaintiffs by failing to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business would use under similar circumstances.

19.    As a direct and proximate result of the negligence of Defendants, Plaintiffs have been damaged and will continue to sustain damages as future.

WHEREFORE, Plaintiffs pray for judgment against the Defendants for actual damages, for punitive damages, together with the costs and disbursements of this action, and for such other and further relief as this Court may deem just and proper.

s/Willard D. Hanna, Jr.
SC Bar No. 02672
HANNA LAW, P.A.
P.O. Box 1149
3401 Highway 17 Business
Murrells Inlet, SC  29576
843.651.9000

Attorney for Plaintiffs

November 21, 2016

Murrells Inlet, South Carolina

ELECTRONICALLY FILED - 2016 Nov 21 11:03 AM - GREENVILLE - COMMON PLEAS - CASE#2016CP2306759

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2016 Nov 21 11:03 AM - GREENVILLE - COMMON PLEAS - CASE#2016CP2306759

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

Clarence Edward Pace, Jr.; Michael Perkins;
and Palmetto Automotive Consultants, Inc.,

              Plaintiffs,

     vs.

Dwight H. Smith and The Smith Insurance
Agency, Inc.,

              Defendants.

IN THE COURT OF COMMON PLEAS
THIRTEENTH JUDICIAL CIRCUIT
CASE NO.: 2016-CP-23- 6759

**SUMMONS**
(Negligence)

**JURY TRIAL DEMANDED**

---

**TO THE DEFENDANTS ABOVE-NAMED:**

     **YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint upon the subscribers at their offices at Post Office Box 1149, 3401 Highway 17 Business, Murrells Inlet, South Carolina, 29576, **within thirty (30) days** of service hereof upon you, exclusive of the day of such service, and, should you fail to answer the Complaint within the time aforesaid, the Plaintiffs shall apply to the Court for the relief sought in the Complaint.

                           s/Willard D. Hanna, Jr.
                           SC Bar No. 02672
                           HANNA LAW, P.A.
                           P.O. Box 1149
                           3401 Highway 17 Business
                           Murrells Inlet, SC 29576
                           843.651.9000

                           Attorney for Plaintiffs

November 21, 2016

Murrells Inlet, South Carolina

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

| NEW YORK | 750 Third Avenue |
|---|---|
| Boston | 25th Floor |
| Las Vegas | New York, NY 10017 |
| Los Angeles | Telephone (212) 668-5927 |
| Paris | Facsimile (212) 668-5929 |
| Redwood City | www.rmkb.com |
| San Francisco | |
| San Jose | Geoffrey W. Heineman |
| Seattle | (646) 454-3243 |



gheineman@rmkb.com

December 6, 2016

**Via Certified Mail Return Receipt Requested**
**E-mail (steve@thesmithinsurance.com)**

Steve Wagner
The Smith Agency Inc. dba Alfred L. Smith Co.
219 N. Pleasantburg Drive
Greenville, SC 29607-2123

| Re: | Insured | : | The Smith Agency Inc. dba Alfred L. Smith Co. |
|---|---|---|---|
| | Insurer | : | Navigators Insurance Company |
| | Policy | : | Insurance Agents and Brokers Professional Liability |
| | Policy No. | : | PH16IAP516824IV |
| | Matter | : | Palmetto Automotive Consultants, Inc. |
| | Claim No. | : | IAP281215 |

Dear Mr. Wagner:

As you know, we represent Navigators Insurance Company ("Navigators") which issued Policy No. PH16IAP516824IV (the "Policy") to The Smith Agency Inc. dba Alfred L. Smith Co (the "Smith Agency" or the "Insured"). We are directing this letter to you as the authorized representative of the Insured. To the extent, you are not acting on the Insured's behalf for insurance coverage purposes, we ask that you forward a copy of this letter to the Insured's authorized representative and provide us with the correct contact information.

As you know, on October 12, 2016, Navigators denied coverage for the matter that you noticed to Navigators as a possible claim from Palmetto Automotive Consultants, Inc and its principals Michael Perkins and Edward Pace (the "Matter"). In issuing its denial, Navigators noted that a letter received by the Insured dated May 16, 2016 (the "Demand Letter") constituted a claim under the terms of the Navigators Policy issued for the policy period of June 12, 2015 to June 12, 2016 (the "Prior Policy"). As such, the Matter was not a claim first made and reported during the Policy's policy period of June 12, 2016 to June 12, 2017 and therefore coverage was unavailable.

In response to your email dated October 17, 2016, Navigators retained this Firm to review its prior coverage determination. By letter dated October 24, 2016, we advised you that following our review, Navigators determined that its prior coverage position was correct. Therefore, on behalf of Navigators, we confirmed in the October 24, 2016 letter that there is no coverage available for the Matter or the Demand Letter under the Policy or the Prior Policy.

4813-0357-1005.1



PLAINTIFF'S
EXHIBIT



Steve Wagner
December 6, 2016                                                                                              Page 2

Navigators recently provided to us your email dated November 28, 2016 with the attached summons and complaint in the action *Clarence Edward Pace, Jr., Michael Perkins, and Palmetto Automotive Consultants, Inc. v. Dwight H. Smith and The Smith Insurance Agency, Inc.*, filed in the Court of Common Pleas Thirteenth Judicial Circuit, Case No. 2016-CP-23-6759 (the "Lawsuit"). In your email, you ask whether the Lawsuit changes Navigators' coverage position. Unfortunately, based upon its review, Navigators has concluded that the Lawsuit does not change Navigators' prior determination that there is no coverage under the Policy or the Prior Policy for the Matter or Demand Letter which includes the recently filed Lawsuit. As such, Navigators will not defend or indemnify the Insured for any Damages or Claim Expenses incurred in the Lawsuit.

The Lawsuit, similar to the Demand Letter, references a lawsuit brought by McElveen Buick GMC, Inc., Economy Cars, LLC, TruAuto, Inc., and Lowcountry Credit Inc. in the Court of Common Pleas for Charleston County against Palmetto Automotive Consultants, Inc. and its principals Michael Perkins and Edward Pace (the "McElveen Lawsuit"). Both the Lawsuit and the Demand Letter note that the Insured was engaged to select and provide for the business insurance needs of Palmetto Automotive Consultants, Inc. but that the insurance policy recommended and purchased did not provide protection for Palmetto Automotive Consultants, Inc. Both the Lawsuit and the Demand Letter reference a demand made against the Insured to defend and indemnify Palmetto Automotive Consultants, Inc. and its principals in the McElveen Lawsuit.

Based on the substantial similarities between the factual allegations in the Lawsuit and the Demand Letter, pursuant to the terms of the Policy the Lawsuit and Demand Letter will be deemed a single claim. The Lawsuit and the Demand Letter arise out of the same acts or omissions, facts, circumstances, situation, transaction or event; namely, the alleged failure of the Insured to procure the appropriate insurance for the business needs of Palmetto Automotive Consultants, Inc. which led to the lack of insurance coverage for Palmetto Automotive Consultants, Inc. and its principals in the defense and indemnification of the McElveen Lawsuit.

In this regard we refer your attention to the definitions of the terms related claims and related acts or omissions as defined in Section III. of the Policy:

        P.    Related claims means all claims arising out of a single act or omission or related acts or omissions in the performance of professional services.

        Q.    Related acts or omissions means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

We also refer your attention to Section II.F. of the Policy which provides in pertinent part as follows:

4813-0357-1005.1

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335



Steve Wagner
December 6, 2016                                                                 Page 3

F.    **Multiple Insureds, Claims and Claimants**

> ...All related claims, whenever made, shall be considered
> a single claim first made when the earliest of the related
> claims was first made and reported when the earliest of the
> related claims was reported in writing to the Company;
> provided, however, that the Insured must report all claims
> as soon as reasonable in accordance with Condition A.1.

Since the Lawsuit and the Demand Letter constitute a single claim, the Lawsuit will be
deemed to be first made on May 16, 2016, during the policy period of the Prior Policy, but since
the Demand Letter was not reported to Navigators until at least August 17, 2016, more than 30
days after the expiration of the reporting period of the Prior Policy, there is no coverage for the
Lawsuit just as there is no coverage for the Demand Letter.

## CONCLUSION

For the reasons discussed above, there is no coverage for the Lawsuit under the Policy.
As a result, Navigators will not defend or indemnify the Insured for any Damages or Claim
Expenses incurred in the Lawsuit.

If you have information or documents that you think would cause Navigators to alter or
change its conclusion and determination as stated herein, we request that you forward such
information and materials to us. Upon receipt, we will review the information and materials with
Navigators and will advise whether it leads Navigators to alter or modify its stated position.

Finally, please note that nothing in this letter shall be construed as a waiver of
Navigators' rights and defenses under the Policy, Prior Policy or those available at law or in
equity, including the right to rescind coverage, all of which are expressly reserved.

Should you wish to discuss this matter, please do not hesitate to contact the undersigned.

Very truly yours,

Geoffrey W. Heineman

GWH/lma

4813-0357-1005.1

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

# MCNAIR
### ATTORNEYS

VIA CERTIFIED MAIL

Bernie W. Ellis

December 15, 2016

bellis@mcnair.net
T 864 271.4940
F 864 271.4015

Geoffrey W. Heineman, Esq.
Ropers Mjeski Kohn Bentley PC
750 Third Avenue
25th Floor
New York, New York 10017

Re:   Insured    : The Smith Agency, Inc. dba Alfred L. Smith Co.
      Insurer    : Navigators Insurance Company
      Policy     : Insurance Agents and Brokers Professional Liability
      Policy No.  : PH161AP516824IV
      Matter     : Palmetto Automotive Consultants, Inc.
      Claim No.  : IAP28125

Dear Mr. Heineman:

I represent The Smith Insurance Agency, Inc. ("Smith") in Greenville South Carolina. I have reviewed your letter regarding the above-referenced matter dated December 6, 2016.

I would strongly urge Navigators to reconsider its position and to accept the defense of Civil Action No. 2016-CP-23-6759, even if under a reservation of rights.

In <u>Navigators Specialty Ins. Co. v. Med Benefits Adm'rs of MD, Inc.</u>, 2014 U.S. Dist. LEXIS 22631, the U.S. District Court for the District of Maryland held that under Maryland law, even where there is a claims-made-and-reported policy, the insurer, Navigators, had to prove that that it had suffered actual prejudice resulting from defendants' failure to notify Navigators of the claim within the policy period. The reasoning behind the court's decision was that the notice provisions were covenants, not conditions precedent. Therefore, while the insured may have breached a covenant, the insurer had to prove that that breach caused actual prejudice to the insurer.

South Carolina law appears to be the same. In <u>Episcopal Church v. Church Ins. Co.</u>, 53 F. Supp. 3d 816 (D.S.C. 2014), the District Court held that "Plaintiff's

McNAIR LAW FIRM, P.A.
Poinsett Plaza, Suite 700
104 South Main Street
Greenville, SC 29601

Mailing Address
Post Office Box 447
Greenville, SC 29602

mcnair.net



1357689v1

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

Geoffrey W. Heineman, Esq.
December 15, 2016
Page 2



**MCNAIR**

ATTORNEYS

duty to provide notice of a suit is a covenant under the Policy, not a condition precedent to CIC-VT's duty to defend." Id., at 828. Therefore, the insurer was required to prove prejudice from a late notice to deny coverage. Id.

To the extent the notice was late, Navigators will not be able to prove prejudice arising from that notice. Had Smith immediately sent the letter dated May 16, 2016, it is indisputable that Navigators would have refused the demand for indemnification, and rightly so. The ability of an insured to hold an agent liable for negligent advice regarding an insurance policy is very limited in South Carolina, and in my judgment, Navigators would have been correct to deny the demand.

Smith's having been served with a lawsuit is an entirely different matter because no matter how meritless the case against Smith may be, there are still costs in defending the lawsuit, and there are the usual risks of litigation.

There is a further matter I would bring to your attention which, in all fairness, Navigators may not have been aware of: When Dwight Smith of the Smith Agency received the May 16 letter, the author of the letter, Willard Hannah, told him not to worry about it despite what the letter said. (Incidentally, Mr. Hannah has expressed directly to me that he believes the underlying claim to be frivolous.) Therefore, to Smith's understanding, Mr. Hannah withdrew the May 16 letter. However, in August of 2016, Mr. Hannah told Mr. Smith that Mr. Smith should contact his insurer which Mr. Smith did. If you need an affidavit to this effect, please let me know.

Unless I hear from you otherwise, I will proceed with the defending the case; however, Smith reserves all its rights under the policy to seek a recovery against Navigators as necessary.

I look forward to hearing from you.

With kind regards, I am

Very truly yours,

McNAIR LAW FIRM, P.A.

Bernie W. Ellis

cc:    Dwight Smith    (*via email*)

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

**NEW YORK** | 750 Third Avenue
Boston | 25th Floor
Las Vegas | New York, NY 10017
Los Angeles | Telephone (212) 668-5927
Paris | Facsimile (212) 668-5929
Redwood City | www.rmkb.com
San Francisco |
San Jose | Geoffrey W. Heineman
Seattle | (646) 454-3243



Geoffrey.Heineman@rmkb.com

January 20, 2017

**Via E-mail (bellis@mcnair.com)**

Bernie W. Ellis
McNair Law Firm, P.A.
Poinsett Plaza, Suite 700
104 South Main Street
Greenville, SC 29601

|        | Re:      | :   |                                                      |
|--------|----------|-----|------------------------------------------------------|
|        | Insured  | :   | The Smith Agency Inc. dba Alfred L. Smith Co.        |
|        | Insurer  | :   | Navigators Insurance Company                         |
|        | Policy   | :   | Insurance Agents and Brokers Professional Liability  |
|        | Policy No. | : | PH16IAP516824IV                                      |
|        | Matter   | :   | Palmetto Automotive Consultants, Inc.                |
|        | Claim No. | :  | IAP281215                                            |

Dear Mr. Ellis:

As you know, we represent Navigators Insurance Company ("Navigators") which issued Policy No. PH16IAP516824IV (the "Policy") to The Smith Agency Inc. dba Alfred L. Smith Co (the "Smith Agency" or the "Insured") for the policy period of June 12, 2016 to June 12, 2017 and issued Policy No. PH15IAP516824IV which had a policy period of June 12, 2015 to June 12, 2016 (the "Prior Policy"). We are directing this letter to you as the authorized representative of the Insured. To the extent you are not acting on the Insured's behalf for insurance coverage purposes, we ask that you forward a copy of this letter to the Insured's authorized representative and provide us with the correct contact information.

We write in response to your letter dated December 15, 2016. Thank you for bringing to Navigators' attention the case of *Episcopal Church v. Church Ins. Co.*, 53 F.Supp.3d 816 (D.S.C. 2014).[1] Unfortunately, the *Episcopal* case does not change Navigators' determination that the action *Clarence Edward Pace, Jr., Michael Perkins, and Palmetto Automotive Consultants, Inc. v. Dwight H. Smith and The Smith Insurance Agency, Inc.*, filed in the Court of Common Pleas Thirteenth Judicial Circuit, Case No. 2016-CP-23-6759 (the "Lawsuit") is not a claim first made and reported during the Policy or the Prior Policy. The policy at issue in the *Episcopal* case is a

---

[1]     Navigators is also very familiar with the action entitled *Navigators Specialty Ins. Co. v. Med. Benefits Adm'rs of MD, Inc.*, 2014 U.S. Dist. LEXIS 22631 which is also referenced in your letter. However, it is Navigators' view that the district court's ruling in that case is not binding on this matter. The *Med. Benefits* case concerned the applicability of a Maryland prejudice statute to a claims made and reported policy. It does not appear that South Carolina has a similar statute.

4818-8360-6335.2

**PLAINTIFF'S EXHIBIT**

**R**

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335



Bernie W. Ellis
January 20, 2017                                                                            Page 2

claims-made policy which is different from the Policy and the Prior Policy which are both claims-made and reported policies.

A claims-made policy is one in which a claim must be made against the insured during the policy period, but need only be reported to the insurer "promptly" or "as soon as practicable" but not necessarily during the policy period. Indeed, the policy in the *Episcopal* case required that the claim be reported to the carrier "promptly." *Episcopal*, 53 F.Supp.3d at 819; 827-828. In contrast, a claims-made and reported policy is one in which the claim must be both made against the insured and reported to the insurer during the policy period, or any applicable grace period or extended reporting period. Therefore, the *Episcopal* case and the cases cited in that decision by the court all hold that the notice provision is a covenant (and not a condition precedent) and therefore substantial prejudice to the insurer must be demonstrated in order for an insurer to deny coverage. As such those decisions are not particularly relevant as none of those cases involved a claims-made and reported policy which is the situation here.[2]

Unlike the *Episcopal* case, the Policy and the Prior Policy are both claims-made and reported policies. On the top of the first page of the declarations page of the Policy and the Prior Policy, it states in large capital letters and in bold: "**THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY**." Right underneath that, the declarations page of the Policy states in capital letters and in bold: "**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY**." The same language is found in the declarations page of the Prior Policy but in sentence case.

Additionally, on the first page of the Policy and the Prior Policy, it states in large capital letters and in bold: "**THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ THE ENTIRE POLICY CAREFULLY**." Additionally, the Insuring Agreement of the Policy and the Prior Policy both provide that for coverage to apply, the claim must be reported to Navigators during the policy period of the applicable policy. In particular, the grant of coverage under the Policy and the Prior Policy provides as follows:

---

[2]     Indeed, in the most recent South Carolina case addressing this issue, *CAMICO Mutual Insurance Company v. Jackson CPA Firm, et al.*, 2016 U.S. Dist. LEXIS 177122, *34 (D.S.C. December 22, 2016), the court acknowledged the *Episcopal* case and found that the reporting requirement of a claims-made policy "differs greatly" from a claims-made and reported policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335



Bernie W. Ellis
January 20, 2017

Page 3

A.    Coverage

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period** or **extended reporting period** (if applicable) by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by someone for whom the Insured is legally responsible, provided that:

1.    No such act or omission, or **related act or omission**, was committed prior to the **retroactive date**;

2.    Prior to the inception date of first policy issued by the **Company**, and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**;

(Policy, Section I.A.; Prior Policy, Section I.A.)

Additionally, under Section V.B. of the Policy and the Prior Policy, it states as follows:

B.    Claim Reporting Grace Period

This policy will provide coverage for **claims** that are first made against the **Insured** during the **policy period** and reported by the **Insured** in writing to the **Company** within thirty (30) days after the expiration of the **policy period**, provided that prior to the expiration of this policy, the **Insured** was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due.

The **claim** reporting grace period does not extend the **policy period**.

Accordingly, the Policy and the Prior Policy are both clear and unambiguous that in order to trigger coverage, the claim must not only be first made during the relevant policy period, but

4818-8360-6335.2

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335



Bernie W. Ellis
January 20, 2017

Page 4

the claim must also be reported to Navigators during the relevant policy period. See *Episcopal*, 53 F.Supp.3d at 821 (An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction); *CAMICO*, 2016 U.S. Dist. LEXIS at *22 ("[t]he insurer's duties under a policy of insurance are set forth by the terms of the policy and cannot be enlarged or curtailed by judicial construction."); *GS2 Eng'g & Envtl. Consultants, Inc. v. Zurich Am. Ins. Co.*, 956 F. Supp. 2d 686 (D.S.C. 2013 [granting insurer's motion for summary judgment as the insured failed to comport with the reporting requirements of a claims-made-and-reported policy]). In this regard, we refer you to Navigators' letter dated October 12, 2016 and our letters dated October 24, 2016 and December 6, 2016 which letters are incorporated herein by reference. As set forth in those letters, the Insured failed to report the claim in accordance with the terms and conditions of the Policy and/or the Prior Policy.

In your December 15, 2016 letter, you note that when Dwight Smith of the Smith Agency received the letter dated May 16, 2016 (the "Demand Letter") from William Hanna, Jr. of Hanna Law, counsel for Palmetto Automotive Consultants, Inc and its principals Michael Perkins and Edward Pace, Mr. Hannah told Mr. Smith "not to worry about it despite what the letter said" and "[t]herefore, to Smith's understanding, Mr. Hannah withdrew the May 16 letter." Additionally, you advise that if Navigators needs an affidavit from Mr. Smith to let you know. While Navigators would review the affidavit and any other document or information that may affect Navigators' coverage determination, we do caution that the chronology of events as set forth in our October 24, 2016 letter appears to undercut Mr. Smith's understanding. Additionally, we are not aware of any cases in South Carolina that excuse an Insured from its duty to timely report a claim based on its subjective understanding as to the merits of a claim. If you are aware of any such holdings, please forward them along to us.

## CONCLUSION

For the reasons discussed above and in Navigators' letter dated October 12, 2016; our letter dated October 24, 2016; and our letter dated December 6, 2016, there is no coverage for the Demand Letter or the Lawsuit under the Policy or Prior Policy. If you have any information or documents, including the affidavit from Mr. Smith, that you think would cause Navigators to alter or change its conclusion and determination as stated herein, we request that you forward such information and materials to us. Upon receipt, we will review the information and materials with Navigators and will advise whether it leads Navigators to alter or modify its stated position.

Finally, please note that nothing in this letter shall be construed as a waiver of Navigators' rights and defenses under the Policy, Prior Policy or those available at law or in equity, including the right to rescind coverage, all of which are expressly reserved.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
                        )        THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF GREENVILLE    )
                        )
Clarence Edward Pace, Jr.; Michael )    C.A. No.: 2018-CP-23-01423
Perkins; and Palmetto Automotive  )
Consultants, Inc.,      )
                        )
        Plaintiff,      )    **SECOND AMENDED COMPLAINT**
                        )
                        )    **(JURY TRIAL DEMANDED)**
v.                      )
                        )
Dwight H. Smith and The Smith )
Insurance Agency, Inc.,  )
                        )
        Defendant(s).    )
_____ )

That the Plaintiffs above named, complaining of the Defendants herein would show this

Honorable Court the following:

## JURISDICTION

1. Plaintiff Clarence Edward Pace, Jr. is a citizen and resident of Greenville County, South

   Carolina; that Plaintiff Michael Perkins is a citizen and resident of Georgetown County,

   South Carolina; and that Plaintiff Palmetto Automotive Consultants, Inc. is a corporation

   organized and existing pursuant to the laws of South Carolina.

2. Defendant Dwight H. Smith (hereinafter "Agent") is, upon information and belief, a

   licensed insurance agent selling insurance in the State of South Carolina. Defendant The

   Smith Insurance Agency, Inc. (hereinafter "Agency") is, upon information and belief, a

   licensed insurance agency in the business of selling insurance in the State of South

   Carolina.



ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

3.  At all times hereinafter mentioned, the Agent was acting as the agent, servant, and/or employee of the Agency.

4.  Jurisdiction and venue is proper in the Common Pleas of the Thirteenth Judicial Circuit in Greenville, South Carolina because it is the location of the Agency's principal place of business and where the most significant amount of the acts or omissions which give rise to this lawsuit occurred.

### STATEMENT OF FACTS

5.  The Plaintiffs Pace and Perkins are the principals of Palmetto Automotive Consultants, Inc. Plaintiffs' business consist of acting as a representative for companies that provide F & I products to automobile dealerships in various states.

6.  Plaintiffs initially sought out insurance coverage for Plaintiffs' business Palmetto Auto from Phillip Wills of Wills and Associates, Inc. in Mauldin, South Carolina.

7.  That when Plaintiffs came to Mr. Wills office, Mr. Wills informed Plaintiffs that he did not deal in commercial policies. However, Mr. Wills explained to Plaintiffs that he had a referral relationship with Dwight H. Smith and The Smith Agency.

8.  Mr. Wills and Plaintiffs immediately called Defendant Smith from Mr. Wills' office. Plaintiffs then explained to Defendants the nature of Plaintiffs' business and specifically requested that Defendants advise and procure the appropriate type of insurance, including a policy that would cover claims arising out of acts and omissions, including but not limited to, the selection, sale, and representations made in connection with products sold by Plaintiffs. Defendants confirmed they could meet the needs of Plaintiffs based upon the risks of their business and set up an appointment to sign the necessary paperwork.

9.  Plaintiffs then went to Defendants' office, executed the necessary paperwork, and ultimately paid the premiums associated with the policy.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

10. At all times relevant Defendants held themselves out to have the knowledge and expertise in the selection and procurement of insurance policies to fit the Plaintiffs' business needs.

11. Defendants were fully aware of the nature of the Plaintiffs' business, the risks inherent in the operation of that business, and the potential risks and liabilities.

12. Plaintiffs relied on Defendants to select and provide them with insurance that would fit their business needs.

13. Over a period of years, Plaintiffs have agreed to purchase from the Defendants and did in fact purchase from the Defendants liability insurance.

14. Plaintiffs requested to purchase, and the Defendants agreed to sell insurance that would cover liability associated with the Plaintiffs' business operations ...specifically that would cover the risk associated with the Plaintiffs' business of selling F & I products to car dealers.

15. Prior to the purchase of insurance being sold by Defendants, Plaintiffs requested, and Defendants agreed to advise Plaintiffs' and select appropriate insurance in accordance with risks inherent with their business. Further, had Defendants not agreed to advise and select the appropriate insurance for Plaintiffs, Plaintiffs would have procured insurance elsewhere.

16. Plaintiffs paid premiums for the insurance policies recommended by Defendants, for which the Defendants received a commission.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

17. Defendants did in fact undertake to assess the insurance needs of the Plaintiffs' business and Plaintiffs relied upon the Defendants' assessment and agreed to purchase the insurance being recommended and brokered by the Defendants.

18. An express and implied agreement existed between the parties for the Defendants to advise Plaintiffs' and to sell to Plaintiffs insurance that would cover liabilities and risks associated with the services and products sold by Plaintiffs' business. Defendant sold to Plaintiffs policies of insurance over a period of years that Defendants impliedly represented covered the Plaintiffs' business against the risks associated with Plaintiffs' business operations. Furthermore, Plaintiffs were referred to Defendants by a fellow insurance agent, Phillip Wills. Defendants and Mr. Wills had a referral relationship specifically relating to the procurement of insurance such as professional liability, as Mr. Wills did not deal in this type of insurance. By virtue of this longstanding referral relationship alone, Defendant Dwight Smith knew or should have known that Plaintiffs needed professional liability coverage.

19. Defendant was at all times herein holding himself and his agency out as a broker of insurance and as an agent licensed and authorized to sell commercial and professional liability insurance products in the state of South Carolina.

20. Defendants did in fact advise Plaintiffs to purchase a commercial policy of insurance along with an umbrella coverage and riders, which Plaintiffs did purchase through the Defendants and paid premiums for the same over a period of years.

21. In March of 2016 Plaintiffs were sued relating to issues arising out of their business operations. Plaintiffs promptly tendered the defense of the claim to their insurance company--Auto Owners. Auto Owners refused to assume defense of the claim on the

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

grounds that the insurance policy sold to the Plaintiffs by the Defendants did not include coverage for the business operations is issue in the underlying lawsuit (CA No.: 2016-CP-10-01409, McElveen Buick GMC, Economy Cars, LLC, TruAuto, Inc., and Lowcountry Credit, Inc. v. Edward Pace, Michael Perkins, Palmetto Automotive Consultants, Inc. et al); which remains currently pending in Charleston, South Carolina.

22. Plaintiffs were then notified that the only policy of insurance in effect for the company was a commercial general liability policy, and such policy was useless to Plaintiffs.

23. Plaintiffs have demanded that Defendants take over the defense of the action filed against them, and that they be held harmless and indemnified by Defendants. The Defendants have failed and refused to respond to this demand.

24. That the Defendants expressly and impliedly agreed to evaluate and advise the Plaintiffs as to their insurance needs and expressly and impliedly agreed to continue to advise on an annual basis including forwarding recommendations for insurance and premium notices. Also, the Defendants, through a course of conducting business in this fashion with the Plaintiffs over a period of years undertook to consult and advise as to Plaintiffs' insurance needs.

25. Defendants' failure to provide the insurance coverage that would protect the Plaintiffs' business operation and in fact selling the Plaintiffs insurance that did not protect against the risks associated with the business operation constitutes a breach of the agreement between the parties as outlined above.

26. Further, the Defendants' failure to procure the correct policy of insurance to cover the Plaintiffs' business operations, and the failure to advise the Plaintiffs that the coverage Defendants were selling would not cover the risks associated with Plaintiffs' business

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

constitutes a breach of the Defendants duty to the Plaintiffs to use due care in the analysis and advice as to the Plaintiffs' insurance needs.

27. At all times relevant, Defendants expressly and impliedly undertook a duty to advise Plaintiffs as to their specific insurance needs. As such, Defendants owed a duty of competence and skill as the agent and broker in advising Plaintiffs and in procuring the correct insurance coverage for Plaintiffs' needs.

28. Defendants represented to Plaintiffs that they had recommended and procured for the Plaintiffs a product that would provide adequate insurance based on the nature of Palmetto Auto's business and Plaintiffs' needs.

29. Defendants breached the duties owed to Plaintiffs by failing to exercise the standard of skill and care that a reasonably prudent person engaged in the insurance business would use under similar circumstances.

30. That as a result of all of the above Plaintiff has suffered harm, losses and damages as a direct, proximate and expected result as follows:

    a.  damages resulting from the underlying tort action against Plaintiffs;

    b.  past, present, and future attorney's fees and costs in the underlying action against Plaintiffs;

    c.  attorney's fees and costs in the instant action; and

    d.  In such other ways as discovery and trial shall prove.

## FOR A FIRST CAUSE OF ACTION
### (Negligence)

21. Plaintiffs restate and re-allege each and every paragraph stated herein as if repeated verbatim.

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

22. During the initial procurement of insurance and the course of parties' dealings thereafter, Defendants expressly and impliedly undertook a duty to advise Plaintiffs in regard to the appropriate insurance for their business. Further, Defendants had superior knowledge in the field of commercial business liability and a long-standing relationship with Plaintiffs. Accordingly, Defendants had a duty to select and provide the appropriate insurance to the Plaintiffs, and the Plaintiffs relied on the same.

23. That Defendants owed Plaintiffs a duty to procure the correct type of insurance and use the standard of skill and care that a reasonably prudent person engaged in the insurance business would use under similar circumstances.

24. That Defendants, by and through their acts and omissions, were negligent, grossly negligent, reckless, willful and wanton in, including but not limited to the following particulars:

    a.  Procuring the wrong type of insurance coverage;

    b.  Subsequently failing to notify Plaintiffs that they did not have the appropriate coverage, despite being fully aware of the nature of the Plaintiffs' business, the risks inherent in the operation of that business, and the potential risks and liabilities.

    c.  Failing to properly assess the Plaintiffs' insurance needs and thereafter in failing to procure proper coverage which would have protected the Plaintiffs from claims in the course of their business;

    d.  By failing to properly advise Plaintiffs as to their insurance needs;

    e.  By misrepresenting to Plaintiffs that their insurance was proper and adequate;

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

    f.  By selling to Plaintiffs and charging the Plaintiffs premiums for insurance that did not provide coverage (against claims and defense costs) for a significant amount of Plaintiffs' business operations;

    g.  By failing to use that degree of care and caution which a reasonable prudent insurance agent would have used under the same or similar circumstances;

    h.  By failing to properly review Plaintiffs' insurance coverage and repeatedly selling to Plaintiff the wrong coverage; and

    i.  In such other and further ways as discovery and trial may prove.

25. That as a direct and proximate result of Defendants' acts and/or omissions, the Plaintiffs have been greatly damaged as set forth above and Plaintiffs are entitled to actual and punitive damages together with reasonable and appropriate attorney's fees.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

26. Plaintiffs restate and re-allege each and every paragraph stated herein as if repeated verbatim.

27. An express and/or implied contract existed between Plaintiffs and Defendants.

28. Plaintiffs and Defendants entered into an express and/or implied contract whereby Plaintiffs agreed to purchase insurance from Defendants so long as Defendants could procure the correct type of insurance based on the needs of Plaintiffs. In exchange for Defendants procurement of the correct type of insurance for Plaintiffs, Defendant's received the benefit of securing Plaintiffs' insurance business and, upon information and belief, a portion of the premiums paid by way of commission.

29. Defendant had express and implied contractual duties to the Plaintiffs which were breached as follows:

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423

    a.  The failure to abide by good faith and fair dealing;

    b.  Having or undertaking a duty to properly and adequately evaluate and process the appropriate paperwork to insure the Plaintiffs;

    c.  For having or undertaking a duty to inspect and approve the paperwork;

    d.  By failing to pay and appropriately adjust the Plaintiffs' loss, and have in place insurance which would pay legitimate claims and defense costs;

    e.  By having or undertaking a duty to properly advise and failing to properly advise the Plaintiffs as to the appropriate type of insurance coverage for their business;

    f.  In failing to properly adjust, appraise, and pay for the covered loss;

    g.  In failing to properly inform, advise, and instruct the Plaintiffs;

    h.  In failing to have issued the correct insurance to cover Plaintiffs' business operations; and

    i.  In such other and further ways as discovery and trial may prove.

30. That such breaches were without justifiable reason and were in violation of the express and implied terms of the contract.

31. That as a result, Plaintiffs suffered damage as set forth more fully above and are entitled to actual damages and attorney fees.

WHEREFORE, Plaintiffs pray for judgment against the Defendants for actual damages, punitive damages, for the costs of this action, for attorney's fees and for such other and further relief as the court may deem just and proper.

Plaintiffs hereby demand a trial by jury.

{SIGNATURE PAGE TO FOLLOW}

Respectfully submitted,

CHRISTIAN & DAVIS,

s/S. Willingham Davis
Richard V. Davis
S.C. Bar No.: 1589
S. Willingham Davis
S.C. Bar No.: 101712
Post Office Box 332
Greenville, South Carolina 29602
Phone: (864) 232-7363
Fax: (864) 370-3731
wdavis@christiananddavis.com
Attorneys for Plaintiffs

Greenville, South Carolina
Date: August 1, 2018

ELECTRONICALLY FILED - 2019 Jan 22 4:34 PM - GREENVILLE - COMMON PLEAS - CASE#2019CP2300335

ELECTRONICALLY FILED - 2018 Aug 01 10:42 AM - GREENVILLE - COMMON PLEAS - CASE#2018CP2301423